Mr. Justice Miller
delivered tbe opinion of the court:
The appellee sued in the Court of Claims on a written contract. signed by himself, and by Major Henry C. Symonds,. commissary of subsistence on behalf of tbe United States, by which be agreed, at a fixed price, to slaughter and pack for-the Government fifty thousand bogs at Louisville. The live hogs, the cooperage, salt, and other necessary materials were to be delivered to claimant, and he was to do the work of slaughtering and packing. The Government furnished 17,132 hogs, which were killed and packed, and this service paid for, and failed to furnish any more. This suit is brought to recover damages for that failure; and the Court of Claims gave judgment in favor of the claimant for $19,720.80.
The counsel for tbe appellants urges eight separate objections, to this judgment, which we must notice in the order they are presented.
1. Pork-packing and curing bacon is not.a business within the scope of the powers of the Secretary of War or his subordinates.
If by this is meant that the War Department has no authority to enter into the business of converting hogs into pork, lard, and bacon for purposes of profit or sale, as individuals do, the proposition may be conceded. But, if it is intended to deny to-the Department this mode of procuring supplies when it may be the only sufficient source of supply for the Army, the proposition is not sound. The Commissary Department is in the habit, and always has been, of buying beef-cattle and having them slaughtered and delivered to the forces. Is there no power to, *95 pay the butchers who kill for their services ? That is just what the claimants contracted to do with the hogs which the Government had purchased of other parties, and it is for this butchering and curing the meat that the Government agreed to pay. The proposition places a construction altogether too narrow on the powers confided to the War Department in procuring subsistence, which, in time of war, as this was, must lead to great embarrassment in the movement and support of troops in the field.
2. The contract is not binding, because it contains no provision for terminating it at the discretion of the Commissary-General.
This objection is based on Buie 1179 of the Army Begulations of 1863. But that has reference to contracts for the regular and continuous supply of subsistence stores, and not to contracts for services or labor; and it is required because the post or force to be supplied may be suddenly removed or greatly diminished. It has no application to a contract for a certain amount of supplies, neither more nor less, or to do a specific job of work requiring skilled labor. While the commissaxy might have insisted on a provision in this contract that he should only be required to pay for packing as many hogs as he chose to furnish, for which he might, in that event, have been charged a higher price, he did not do so, and cannot have the benefit of it as though he had.
3. This answers also the third point, namely, that the agreement is to be treated as though that provision were in it.
4. That it is not binding on the United States, because there was no advertisement for proposals to contract.
This objection is founded on the Act of'March 2,1861, (12 Stat. L., p. 220.)
But that statute, while requiring such advertisement as the general rule, invests the officer charged with the duty of procuring supplies or services with a^ discretion to dispense with advertising, if the exigencies of the public service require immediate delivery or performance.
It is too well settled to admit of dispute at this day, that where there is a discretion of this kind conferred on an officer or board of officers, and a contract is made in which they have exercised that discretion, the validity of the contract cannot be made to depend on the degree of wisdom or skill which may *96 have accompanied its exercise. (Philadelphia and Trenton Railroad Company v. Stimpson, 14 Peters, 448; Martin v. Mott, 12 Wheaton, 19; Royal British Bank v. Tarquaud, 6 Ellis & Blackburn, 327; Maclae v. Sutherland, 25 English Law & Eq., 114; Ross v. Reed, 1 Wheaton, 482.)
5. The contract was not approved by the Commissary-General.
The agreement contains a provision that it is subject to the approval of that officer. The Court of Claims finds that while no copy of the agreement was presented to the Commissary-General for formal approval, Major Symonds wrote Mm a letter informing him substantially of its terms, to which he replied, expressing his satisfaction at the progress made; and the court further finds as a conclusion of law that the letter of the Commissary-General was a virtual approval of the contract. We are of opinion that, taking all this together, it is a finding by the court as a question of fact that the contract was approved by that officer; and, inasmuch as neither the instrument itself nor any rule of law prescribes the mode in which this approval shall be evidenced, that a jury would have been justified in1 finding as the court did.
6. That by the terms of the contract the United States were not bound to furnish any given number of hogs.
Without entering into a discussion of the general doctrine of the implication of mutual covenants, we deem it sufficient to say that where, as in this case, the obligation of plaintiffs requires an expenditure of a large sum in preparation to enable them to perform it and a continuous readiness to perform, the law implies a duty in the other party to do whatever is neces*sary for him to do to enable plaintiffs to comply with their promise or covenant. But the last article of the agreement seems to be an express promise to furnish all the hogs mentioned in the contract.
7. That plaintiffs have not proved that they were ready and willing to perform.
But the Court of Claims find this readiness, for they say that u claimants incurred large expenditures in preparation for fulfilling their contract, and during the whole season kept the full complement of hands necessary to have slaughtered the whole 50,000 within the customary season.”
*97 8. The rule for the measure of damages is not the correct rule as applied to the facts.
What would be the true rule is not pointed out. And we do not believe that any safer rule or one nearer to that supported by the general current of authorities can be found than that adopted by the court, to wit, the difference between the cost of doing the work and what the claimant was to receive for it, making reasonable deduction for the less time engaged and for release from the care, trouble, risk, and responsibility attending a full execution of the contract.
The leading case on this subject in this country is Masterson v. Brooklyn, 7 Hill, 62, and that fully supports the proposition of the Court of Claims.
This opinion disposes also of the case of The United States v. Robert Floyd, which is on a contract identical with this ; and. the judgments in both cases are affirmed.