Eichardson, J.,
delivered tbe opinion of tbe court:
Tbe only question of law involved in this case arises upon tbe construction to be given to tbe first article of tbe contract set forth in tbe xietition, tbe exact language of which is that tbe claimant agrees to “supply, or cause to be supplied and delivered, at tbe quartermaster’s department at tbe military station at Bismandc, Bale., six hundred thousand pounds, more or less, of oats, at two dollars and twenty-three and seven-sivteenths cents ($2.23y'6) per one hundred pounds, the oa.ts to be of pood merchantable quality, free from dirt or other foreign matter, and to be delivered in good, neic burlap sacies, each sack to contain no greater quantity than 128 pounds, or such other quantity, more or less, as may be required from time to time for tbe wants of said station between tbe 1st day of July, 1.877, and the 31st day of December, 1877, in such quantities and at such times as tbe receiving officer may require,” the words constituting tbe first part of tbe agreement, here printed in italics, being written in a printed blank used by the parties in drawing tbe contract, and those of tbe second being in print.
Tbe claimant contends that be was bound to supply, and tbe defendants were bound to receive from him, not only tbe 6.)i),000 pounds specifically mentioned, which they did receive and for which be has been paid, but all tbe oats that tin wants of tbe Bismarck military station required, if more than that quantity, between July 1 and December 31,1877, however great tbe same might be, without, reference to tbe quantity specifically named, and without being required so to do by tbe receiving officer or any other officer of tbe defendants; and it appearing by the facts proved that tbe defendants received, during that period, from other parties, under other contracts, 3,1.18,616 pounds, which be was ready and willing to deliver, be claims that they *300 have violated their obligation, and that he is entitled to recover damages on account thereof to the amount of $21,855.
In our opinion, the obligation which the defendants incurred, assuming it to be coextensive with that of the claimant, according to the uniform decisions of this court and the Supreme Court in the construction of contracts unilateral in form (Speed’s Case, 8 Wall., 77, and 7 C. Cls. R., 93; Caldwells Case, 8 id., 335; Brawley's Case, 11 id., 522, affirmed on appeal 96 U. S., 168, and 13 id., 521), was to receive and pay for either 600,000 pounds or such other quantity as should be required of him by the defendants’ officers for the wants of the military station, and that the doing of either ivas a performance of their contract and relieved them from further liability. That is the natural and grammatical meaning and the legal effect of the words of the contract, which cannot be interpreted as the claimant would have it without doing violence to the language adopted by the parties and to well-settled rules of law. The word “or” is sometimes made to signify “ and,” when it appears to be consistent with the meaning implied by the context and in order to carry out the manifest intent of the contracting parties; but such an interpretation here would be inconsistent with any intent which can reasonably be gathered from the connection in which the word is used, from the whole contract, or from the light of the surrounding circumstances, and would compel the defendants to receive not only all the oats required for the station, but 600,000 pounds in addition thereto, without any indication as to what purposes the surplus quantity could be used 'for or how it was to be disposed of.
This view is in harmony with that adopted by the Supreme Court in the recent case of Dumont et al., plffs. in error, v. The United States (98 U. S., 142), where a suit was brought upon an importer’s bond for the payment, when the amount should be determined, of duties, then unascertained, on certain imported goods, in which the importer and his sureties obliged themselves to pay $525, or the amount of duties which should be ascertained, or should within three years withdraw and export the goods, or transport them to a Pacific port. The ascertained duties proved to be $676.75. The defendants paid the $525 mentioned in the bond, and the court held that the terms of their contract were satisfied, the obligor having complied with one of the three conditions upon the performance of either of which his bond *301 was to be discharged, and that no further amount- could be recovered thereon iu that action. Although the importer, the principal, would be liable by law for the excess of duties unpaid independently of the bond, it could not be recovered of him and his sureties under the contract sued on.
The words of the first part of the agreement having- been inserted in writing- in an otherwise printed contract, it must be inferred therefrom that they constituted the main and substantive part of the agreement, the part which was more carefully considered by the parties than that which followed in print; for, as is said in Parsons on Contracts (vol. 2, ch. 1, § 3, last paragraph) upon the authorities there cited, “It is reasonable to suppose that the intention of the parties, was. more closely given to those phrases which they themselves selected, and which express the especial particulars of their own contract, than to those more general expressions which belong to all contracts of this class.” It is, however, not necessary to determine in this case how far the quantity specifically mentioned in writing might have been varied one Avay or the other by the defendants’ officers under the alternative printed clause which follows; whether by only such a slight deviation therefrom as from the circumstances of the case or the nature of the articles to be delivered might seem to the court to be reasonable according to the rule for the construction of the words “more or less,” and the force and effect thereof when used in contracts, as laid down in Brawlei/s Case (11 O. Cls. B., 528, affirmed on appeal 96 U. S., 168, and 13 C. Cls. B., 521), or by such larger quantity, not disproportionate to that specified, which, from the whole tenor of the contract and the surrounding circumstances, might fairly be presumed to have been within the contemplation of the parties when they entered into the contract; or by any still greater quantity, however large and disproportionate to that specified, which might be required for the wants of the station, as the present claimant contends, a construction which, if adopted in this case, would extend the quantity from 600,000 pounds to 3,116,616 pounds, or more than five times that which was specifically named.
In point of fact, the quantity was not varied nor attempted to be varied in any manner authorized by the contract, but was left to stand as therein specifically written.
It must be observed that the alternative provision, in print, mates the claimant agree to supply not such other quantity, *302 more or less, as might be required from time to time by the wants of tlie military station, but for tlie wants of the station in such quantities and at such times as the receiving officer might require. The quantity under that provision was therefore to be determined by the receiving o Hiper before it became fixed, as were the times of delivery also; and as he made no such requirement, the claimant was not bound to deliver, nor the defendants to receive, any quantity whatever, great or small, under that part of the agreement.
After the execution of the contract, in order to avoid unnecessary expense and preparation in its performance, the claimant had undoubtedly the right to be informed and to know, at reasonable and proper times, if he desired, whether or not any quantity, and if any, then to what extent, ivonld be required of him under the alternative provision; and as he sought no such information from the defendants’ officers, he must be held to liave been content with their course of proceeding, and to have understood that no greater quantity would be required of him than that which was specified in the contract. The acquiescence of both parties left that quantity unchanged and as governing the contract between them. The claimant’s own actions indicate that such was his understanding of the matter. In thirteen days after the date of his agreement he had delivered the whole 600,000 pounds and a slight quantity in excess, without requisition therefor from the officers or any request from him to learn what quantity would be required. Alore than a month after that, when lie offered to deliver five additional car-loads, and at the end of nearly another month when he. offered four carloads more, and on other occasions when lie asked the officers to receive the same and they refused, he never once claimed the right to deliver them under his contract, but rather asked that they be purchased of him at the contract price as a favor and for his convenience. If he then claimed the construction which he now urges, it was his duty to have so informed the defendants’ officers, that they might not be misled; and as he did not do so, they had a right to infer that he assented to their construction that his contract was for only 600,000 pounds, unless the receiving officer himself required a greater quantity, and he is bound thereby.
When the terms of a contract are ambiguous, the parties may adopt such a construction as they expressly or by tacit concur *303 rence agree upon, and after one of them has acted upon that construction, incurred expense, or done other acts on the faith thereof, the other party cannot set it aside and insist upon a different interpretation inconsistent therewith. It becomes part of the contract itself, in the nature of a new agreement, and is as binding as though it were one of the original provisions.
Moreover, the construction which the claimant now urges, that the quantity was to be fixed by the wants of the military station, independently of the requirements of the receiving officer and of the quantity which -was specified in the written words, would completely nullify the first provision so carefully written into the contract by the parties, and render it wholly without force or effect from the very beginning; a result which alone shows that it cannot be the correct view, for parties are not supposed to write unmeaning and inoperative provisions in their contracts, and all their words must be allowed to have some significance if possible.
We have thus far considered the case -with reference only to the terms of the contract itself and the subsequent proceedings of the parties thereto. If we call to our aid the "light of the circumstances under which the agreement was entered into, as disclosed in -the findings of fact, we shall find that it explains some matters which otherwise cannot be well understood, and fortifies and confirms the construction which we have adopted as expressing the manifest object and intention of the contracting parties. On the 1st of March, 1877, the chief quartermaster (if the Military Department of Dakota advertised for proposals to be sent in by April 26, 1877, for the delivery of supplies for many different posts, stations, and agencies, among which were oats, estimated to be 4,764,700 pounds, necessary for ten different posts and stations, and which the bidders might offer to deliver at Bismarck, or any of three other places. The claimant made a bid in writing, offering to supply,'at Bismarck, 50,000 bushels of oats, equal to 1,600,000, at 71¿- cents per bushel, equivalent to $2.23^ per hundred .pounds; and 50,000 pounds at 73 cents per bushel, equivalent to $2.28¿- per hundred pounds; and two other lots of 50,000 pounds each at still higher prices. One Hall made a bid, offering to supply at said Bismarck also 4,000,000 pounds at $2.25 per hundred pounds. The claimant’s bid was therefore the lowest only on his first offer of 1,600,000 pounds; and Hall’s bid was lowest for the remaining estimated *304 quantity. On tlie 18th of May following, the claimant was notified that a contract had been awarded to bim for furnishing 1,000,000 pounds at the price of $2.23^ per hundred pounds; and a written contract was thereupon entered into between the parties, dated May 15, for the delivery of that quantity. Subsequently, on the 27th of June, apparently with the design of completing the arrangements for the supplies advertised for, the claimant was notified that a further contract for the delivery of 600,000 pounds, at the same price per hundred pounds, was awarded'to him ; and it will be seen that those two quantities together made exactly the whole for which his bid was the lowest. At the same time said Hall, whose bid was the next lowest, was notified that a contract was awarded to him for furnishing 2,620,000 pounds, which was not the full quantity offered by him, but which, with the two quantities awarded to the claimant, provided very nearly for all that had been estimated for, and was apparently all that it was then supposed would be required, as, in fact, it substantially proved to be. In pursuance of these acceptances, on the 29th of June, 1877, the second contract was made with the claimant, as set forth in the petition, for the delivery of 600,000 pounds; and two other contracts with said Hall, one for the delivery of 1,955,000 pounds absolutely, and the other for 665,000 pounds, with the additional provision, as in the claimant’s second contract, “ or such other quantity, more or less, as may be required from time to time for the wants of said station, between the 1st day of July, 1877, and the 31st day of December, 1877, in such quantities and at such times as the receiving officer may require.” Thus we cannot avoid the inference, so distinctly manifest in this particular case and under these circumstances, that by the insertion of those words in each of the smaller contracts with the two successful bidders, when the whole estimated quantity required was specifically provided for, it was contemplated that they might become operative to apply to some comparatively small additional quantity, which, under some circumstances that might arise, it would be found convenient to deliver and receive — a contingency which did in fact happen in each case; or that if one contractor failed the other might be called on; and not to give each contractor the right to deliver the whole, and thus place the defendants in the position of having at the same time contracted with two separate parties each for precisely the sarnie *305 thing, and for double the quantity required. It does not affirmatively and directly appear that the claimant knew of Hall’s bid and contract, but it is not a violent presumption to suppose that he must have known who the successful bidders were, and what was the full result of the bidding under the proposals, as only part was awarded to him ; and he certainly knew that his bid had been accepted for only 1,000,000 pounds, the exact quantity specifically named in his contracts.
Thus under every view which we are able to take of this case the claimant has no cause of action, and his petition must be dismissed.