### WELLS v. NATIONAL LIFE ASS'N OF HARTFORD.

(Circuit Court of Appeals, Fifth Circuit. January 9, 1900.)

#### No. 812.

1. CONTRACTS—ACTION FOR BREACH—DAMAGES.

A party to a contract has but one cause of action for its breach, which is indivisible, and in an action thereon he is entitled to recover whatever damages he can prove within the rules of evidence. Where, in accordance with the rules of pleading of the court in which he sues, he sets out a statement of the facts, he cannot be required by the party guilty of the breach to elect whether he will claim for losses and expenses incurred on the faith of the contract, or for the loss of profits, but he may claim for both; and, in case the profits cannot be proved with sufficient certainty to warrant a recovery therefor, he may at least recover for the money and labor reasonably expended in good faith in reliance on the contract.

2. DAMAGES—BREACH OF CONTRACT—LOSS OF PROFITS.

Plaintiff entered into a contract by which he became the general agent for defendant (a life insurance company) for a term of years, within a specified territory. He was to have sole charge of such territory, to devote his services to the business, establish subagencies at his own expense, and receive as his sole compensation commissions on the initial and renewal premiums received from the business he secured. Held, in an action for a breach of the contract by defendant by transferring the business to other agents during the term without just cause, that plaintiff was not limited, as to damages, to compensation for the money and time expended, but was entitled to claim for loss of commissions, which were by the contract made the measure of his compensation; that he might show the commissions which would have accrued to him under the contract from renewal premiums on policies actually taken by him (the presumption being, as between the parties, that all would be continued in force), and also the amount of new business done by defendant within the territory through the new agents, which was proper to be considered by the jury, together with other relevant evidence, in determining the probable amount of commissions which would have been earned but for the breach of the contract by defendant, and if, on the whole evidence, the jury found that plaintiff had suffered loss of profits in excess of the amount of his outlay of personal services and expenses, he was entitled to recover such excess.

In Error to the Circuit Court of the United States for the Northern District of Texas.

The petition in this case shows, substantially, that the defendant, the National Life Association of Hartford, on June 6, 1894, entered into a contract in writing with Adolph J. Miller, whereby it appointed him its manager for the state of Arkansas and a part of the state of Texas, designated in the contract. This writing expressly provided that the contract then entered into might be sold, assigned, or transferred, with the written consent of the company, and not otherwise, and provided that the contract should terminate by limitation 10 years from and after the date above written. Thereafter Miller did sell, assign, and transfer this contract to the plaintiff, W. T. Wells, and one W. T. Shaw; and on March 23, 1896, the defendant expressed in writing its assent to this transfer, and by the same writing agreed to extend the time of the contract so as to run 10 years from the date of this written assent. On June ———, 1896, the plaintiff and Shaw, by and with the consent of the defendant, released their right under the contract to represent the defendant in the state of Arkansas; and the defendant, in lieu thereof, conceded to them all rights under the contract and agreements to solely represent the defendant throughout the entire state of Texas for and during the 10-year period dating from March 23, 1896. On August ———, 1896, the plaintiff, for a valuable consideration, purchased the entire interest of Shaw in the contract, by and with the consent and approval of the defendant, and thereby became the sole manager of the defendant for the entire state of Texas. By the terms of the contract it was made the duty of the manager to solicit and procure applications of persons to become members of the defendant company; to procure the appointment of agents in the territory under his charge, whose duty it should be to solicit applications; to forward all such applications to the home office of the company for approval or rejection by the officers thereof; to receive policies and deliver the same, and to receive the first premium; and to thoroughly inspect all business written by any agents appointed by him. It was made his duty, and he bound himself, to account for, deliver, and pay over on demand, according to the instructions or requirement of the company, all sums of money which he might receive as premiums, advances, or otherwise, and all policies of insurance and other effects which he might receive on account of the company, whether such sums of money or other property were received by him or by any clerk, agent, or other person employed by him. He agreed that during the continuance of this contract he would devote his entire time and energies to the service therein mentioned, and would perform such other duties as should be required of him by the officers of the company in order to thoroughly develop and work the territory confided to his management. The authority of the manager and his agents was strictly limited, to the extent that neither he nor his agents should make, alter, or discharge any contract between the company and others, or waive forfeiture, extend credit, or make collections of money for his account (the first premium excepted), unless he should first be provided with receipts signed by the secretary of the company. For his compensation he was to receive a specified per cent. of the original and the renewal premiums charged on the different classes of insurance to be written by the company. It was expressly provided that he should receive no further remuneration for any service than as stated in the contract, and that he should not contract debts in the name of the company, unless specially authorized in writing, and that, in consideration of the specified compensation, he should pay any and all agency expenses, medical examination fees, and all license fees in the state in which he was to do business, together with the state, county, and municipal taxes which might be required upon the first year's business or premium receipts. It was provided further that, if the manager should neglect or refuse to thoroughly develop and work the territory allotted to him, then the company, at its option, might employ other agents in any portion of the territory so neglected, without otherwise affecting the contract, and that the manager should have no claim on the business so effected by such other agent or agents so employed; that otherwise the company should not appoint other agents within his territory.

The petition avers: That the plaintiff, since he first became manager for the defendant, has devoted his entire time and energies to representing the defendant, and in carrying out and performing all of the duties devolving on him by virtue of the contract to thoroughly develop and work the territory allotted to him. That from the time he first became manager for the defend-

ant, up to. the breach of the contract by. it, he thoroughly worked and developed the business in all of the territory allotted to him, and has not neglected or refused .to do the same. That during the time he was so engaged he had correspondence with no less than 300 subagents in regard to canvassing, soliciting, and securing policies of insurance for the defendant in the state of Texas, and during that time has had not less than 100 agents actively at work soliciting and securing for the defendant policies of insurance of the classes described in the contract. That the defendant is the only insurance company of the natural premium and old-line insurance companies that writes under-average insurance and substandard insurance (that is, insurance upon negroes; saloon keepers; persons of over and under weights; persons of light physical impairment; debtors or creditors; persons of heart murmur; telephone, telegraph, sawmill, and railroad men and women), and that by reason thereof the plaintiff's contract with the defendant was a most advantageous and profitable one to the plaintiff, as all of these risks are much more easily procured than first-class risks or standard insurance. That up to the time of the breach by the defendant the plaintiff had fully and faithfully carried out his part of the contract, and performed all other duties required of him by the officers of the company. That he has made a scientific study of the insurance business for years, and is a person of great experience in that business, and possessed of more than ordinary push and energy, tact and sagacity, and is in every way well fitted for the duties that devolved upon him under the contract. That at the time he purchased the contract he paid therefor $1,500 in cash, with the knowledge and consent of the defendant. That the contract could not have been purchased for less money, and that the price paid for it was reasonable. That in order to put the business of the defendant on a firm footing in Texas, so as to readily procure applicants to take policies in that company, it was necessary to advertise the same, and to place the merits thereof before the people of Texas, and that in order to do this he had many thousands of circulars printed, setting forth the advantages of the company, and the benefits to be derived therefrom by those who would take policies therein. That he had these circulars distributed all over the state of Texas; sending them to many thousands of persons who would be likely to take insurance in the company, and especially to a great many insurance agents. That, in addition to his correspondence with a great many insurance agents in different parts of Texas, and his employment of over 100 men to work under him to solicit and sell insurance for the defendant company in that state, he was compelled to go in person to different cities of the state, and see the agents, and give them proper instructions for procuring applicants for insurance in the defendant company, and was compelled to incur reasonable expenditures incident to such traveling and establishing subagencies for the defendant company. That the publication and distribution of such literature, the cost of postage and stationery to send the same, and his traveling expenses incurred, amounted to the reasonable sum of $1,000, made up as follows: Expended for postage, $700; for printing circulars and stationery, $100; and. for traveling expenses, $200. That, from the time he acquired the contract until the same was breached by the defendant, he gave all of his time to the faithful performance of the services required, and that for the period thus engaged, namely, 10 months, his services were reasonably worth $250 per month, making for the 10 months $2,500, which is an entire loss to the plaintiff, by reason of the defendant's breaching its contract. That it was necessary to do a great deal more work during the first 12 months after the plaintiff acquired the contract, in order to establish the company in Texas, than at any other time thereafter. That during the time of the plaintiff's service he did succeed in writing about $150,000 of insurance for the defendant company, and applicants in Texas acquired policies of insurance in the defendant company aggregating that amount by and through his efforts prior to the date of the breach of the contract by the defendant, and while he was advertising the company and establishing agencies. That the greater part of the insurance thus written by him were rejected risks from the Hartford Life & Annuity Association and from other insurance companies. That the business of the defendant company in Texas was daily increasing, and that after the date of the breach of the contract by the defendant, by reason of the premises in his petition alleged, it would have involved comparatively little trouble and expense for the plaintiff to have fully performed his contract in Texas for the

remainder of the 10 years, and to have constantly increased the amount of business, after having so advertised the company, established agencies, and placed the business of the defendant on a solid basis in the state. That, notwithstanding the facts in the premises, the defendant did on December ———, 1896, violate and breach its contract, in the following flagrant manner, to wit: It did on that date, without the knowledge and consent of the plaintiff, employ the Hartford Life & Annuity Association, and the firm of Harris & Patterson, of the city of Dallas, insurance agents, and a great many other agents and insurance companies doing business in the state of Texas, to solicit and procure applicants for policies of insurance for the defendant, and especially to procure substandard risks or insurance for it, and to solicit and procure applications of persons to become members of or policy holders in the defendant company, and did on that date, and since that time, through these other agents, issue, without the knowledge and consent of the plaintiff, a great many policies of insurance to persons in the state of Texas, and did on that date, without the knowledge and consent of the plaintiff, employ said insurance companies and agents to become permanent representatives and agents for the defendant, in direct opposition to the plaintiff, and to procure applicants for substandard and other insurance, and to deliver policies thereon for it in that state, and agreed with the first-named company, the Hartford Life & Annuity Association, that the defendant would not employ or seek to employ any agent employed by that company, or accept business offered to the defendant by or through any such agents, thereby depriving the plaintiff of the services of the agents who were at and prior to that time in the employment of the plaintiff, and depriving him, also, of his commissions and renewals on said insurance, and willfully violating the most material provisions of his contract, and flagrantly breaching the same, to the great damage of the plaintiff. That, after the defendant had so breached the contract, it employed Adolph J. Miller, and many other agents and agencies, whose names are unknown to the plaintiff, in Texas, to solicit applications and to sell insurance for it, and to do the work that the plaintiff could and would have done, were it not for said breach. That the defendant, through its agents and agencies, after the date of the breach, procured applicants for policies in the defendant company, and delivered policies to persons in Texas to the amount of about $1,000,000 prior to the time of the filing of this petition, and the premiums on all of said policies, as stipulated in said contract, were for the first year collected by the defendant and its said agents. That by the terms of the contract the plaintiff could and would have written such insurance, and have collected on all the same an average of $20 premium per $1,000, the average amount charged and required by the defendant, in accordance with said contract, as premium therefor for the first year of said insurance, and said premium has been and will be collected by the defendant on said policies for each year after the first year, and that by the terms of his contract he would have earned and been entitled to receive an average of 70 per cent. of the first year's premiums on all of said insurance, to wit, the sum of $14 on the $1,000, as provided by the contract. That the costs and expenses of every nature whatever in procuring and writing said insurance, and paying the subagents for their work, would have amounted to not exceeding 50 per cent. of the gross amount of the first year's premiums, leaving net profits to the plaintiff of $4 on the $1,000, and that by reason of the premises there is due to the plaintiff as commissions on said policies so procured and issued by the defendant, and which could and would have been procured by the plaintiff since said breach, the sum of $4,000. That the policy holders who actually took insurance by and through the efforts of the plaintiff, and through the efforts of the defendant and its agents, after the breach of the contract, have paid the annual premium to the defendant on said policies for the first year, and will continue to pay the premiums on said policies for each and every year thereafter for the period of at least 10 years from the date of such policies, and that by reason of paying the premium for the first year, or "renewing the insurance," as it is commonly called, the plaintiff would have been entitled to and have earned by virtue of his contract the sum of $2.50 as renewals on each $1,000 of insurance, according to the face value of the policies, for all policies renewed or continued by the insured each year after the first year, and that by reason thereof he is entitled to renewals on all of the policies already written and issued by the

defendant to persons in Texas since March 23, 1896, to the date of the filing of his petition, for and during the period of 10 years after the respective dates of the first anniversary thereof, in accordance with the contract, aggregating the sum of $20,000, by reason of the breach of the contract.

The plaintiff prays damages in the sum of $5,000 on account of his expenditures and the value of his services as set out in his petition, and for the sum of $24,000, loss of profits, based upon insurance actually written by the defendant since its breach of its contract, which the plaintiff could have written but for that breach, and by reason of the loss of renewals upon all the insurance so written, as well as that written by the plaintiff prior to the breach. This petition was filed on September 9, 1898.

On November 22, 1898, the defendant submitted a general demurrer and 16 special exceptions. On November 25th the parties filed a written stipulation "that the jury is waived." The judgment recites that "this cause was regularly called for trial on November 25th, and, the jury having been waived, the matters of fact as well as of law were submitted to the court, who, after hearing the pleadings, evidence, and argument of counsel, took the cause under advisement." Except so far as it may be shown by the formal recitation in the judgment, it does not appear that any evidence was offered by either party, and there is no minute entry, other than the final judgment, of any action by the trial court on the demurrer and exceptions submitted by the defendant. In the final judgment it is further recited that "the court, having duly considered this cause, is of opinion that special exceptions Nos. 2, 5, 7, and 8 of the defendant to the plaintiff's petition are well taken; * * * and, it appearing to the court that the exceptions sustained in this cause reach the foundation of the plaintiff's claim," the cause was dismissed, and judgment rendered against the plaintiff and the sureties on his cost bond for all costs incurred in the cause. It appears from the one brief bill of exceptions in the record that the court sustained the seventh of the defendant's special exceptions before acting on the others. It shows that, in sustaining this exception, the court ordered the plaintiff (orally, of course, as no minute entry thereof appears) to make an election as to whether he would ask for damages for the loss of profits alleged to have been sustained by him by reason of the alleged breach of the contract, and only such profits, or whether he would relinquish his prayer for such profits, and ask merely for the alleged damages occasioned by the alleged breach, based upon the amount alleged to have been paid by him, with defendant's knowledge, for the contract, together with the necessary expenses alleged by him to have been incurred in preparing to carry out the contract, and the reasonable value of his services in so doing (the court holding the petition to be defective, in that it prayed for both classes of damages), and required that the plaintiff eliminate absolutely from his pleadings either his prayer for damages based upon the profits lost, or his prayer for damages based upon the expenditures incurred and the value of his services, to which action of the court the plaintiff excepted. The bill of exception further shows that thereupon the plaintiff asked leave to amend his petition so that the prayer thereof should read as follows: "Plaintiff prays for judgment for damages by loss of profits resulting from said breach in the sum of, to wit, $24,000, based upon said insurance actually written by the defendant, as hereinbefore alleged, since said breach, and which plaintiff could have written but for said breach, and the renewals upon such insurance, as well as upon the renewals on the insurance written by plaintiff prior to said breach. But if, for any reason, the court should be of the opinion, after hearing the evidence, that plaintiff is not entitled to judgment for damages based upon the loss of said profits, then he prays that he have judgment for his damages in the sum of, to wit, $5,000, based upon the sum paid by him for said contract, to wit, $1,500; his expenses incurred in preparing to carry out said contract, to wit, $1,000; and the reasonable value of his services in carrying out the same, as hereinbefore set forth,"— which amendment the court refused to allow, and required that the plaintiff eliminate absolutely from his pleadings either his prayer for damages based upon profits lost, or his prayer for damages based upon said expenditures and the value of his services as aforesaid, to all of which action of the court the plaintiff excepted. And without waiving his exceptions, and in obedience to the order of the court, the plaintiff then, under protest, amended his petition by striking out so much thereof as prayed for damages based upon the expendi-

tures made by him in preparing to carry out, and in carrying out, his contract, and upon the reasonable value of his services, and the amount paid for the contract, except such part thereof as corresponded with the unexpired term of the contract (that is to say, amended the same so as to pray only for damages for loss of profits, and such part of the $1,500 paid for the contract as corresponded with the unexpired term of the contract), which last amendment, though not actually written in the petition, was considered as having been written therein by both parties to the case, and agreed to by the court, and was so considered by the court. After the petition had been amended as just stated, the court sustained the defendant's special exceptions Nos. 2, 5, and 8 to the plaintiff's petition, to which action of the court in sustaining each of the exceptions the plaintiff duly excepted.

On the prayer for a writ of error the plaintiff assigned errors as follows: "(1) The court erred in sustaining defendant's seventh special exception to plaintiff's petition, which is as follows: 'Defendant specially excepts to the entire petition because the same proceeds upon two entirely inconsistent causes of action, to wit, the alleged breach of the contract for which damages are sought to be recovered, and the alleged value of services charged to have been rendered the defendant herein.' (2) The court further erred, when acting on said seventh special exception, in c   .ring the plaintiff to make an election as to whether he would pray for damages for loss of profits alleged to have been sustained by reason of the defendant's alleged breach of the contract, relinquishing his prayer for the other elements of damages asked for in the petition, or whether he would relinquish his prayer for such profits, and ask only for the damages alleged to have been occasioned by such breach, based upon the $1,500 claimed by him to have been paid for the contract with defendant's knowledge, together with the necessary expenses alleged by him to have been incurred in preparing to carry out said contract, and the reasonable value of his own services in so doing, all of which is shown in plaintiff's bill of exceptions. (3) The court erred, after having sustained said seventh special exception, and having made the order complained of in the last preceding assignment, in refusing to allow plaintiff to amend the prayer of his petition wherein he prays for damages based upon loss of profits as well as upon his expenses and value of services, so as to pray for damages in the alternative, as follows: 'Plaintiff prays for judgment against defendant for damages by loss of profits resulting from said breach in the sum of, to wit, $24,000, based upon said insurance actually written by the defendant, as hereinbefore alleged, since said breach, and which plaintiff could have written but for said breach, and the renewals upon such insurance, as well as upon the renewals on the insurance written by plaintiff prior to said breach. But if, for any reason, the court should be of the opinion after hearing the evidence that plaintiff is not entitled to judgment for damages based upon the loss of said profits, then he prays that he have judgment for his damages in the sum of, to wit, $5,000, based upon the sum paid by him for said contract, to wit, $1,500; his expenses incurred in preparing to carry out said contract, to wit, $1,000; and the reasonable value of his services in carrying out the same, as hereinbefore set forth,'—all of which is shown in plaintiff's bill of exceptions. (4) The court erred in sustaining the defendant's second special exception to plaintiff's petition, the exception being as follows: 'Defendant specially excepts to said entire petition because it appears therefrom that the damages claimed are purely speculative, there being no possible way to arrive at such damages, save upon the supposition that certain work would have been in the future performed by him; that this work would have, in turn, secured certain applications; and that these applications would have been such, that the company would have, in the exercise of its discretion under the contract, accepted such applications.' (5) The court erred in sustaining defendant's fifth special exception to plaintiff's petition, the exception being as follows: 'Defendant specially excepts to said entire petition because, if the acts alleged therein as a breach on the part of this defendant did constitute a breach, then the plaintiff has entirely misconceived the measure of damages in such cases, and fails in law to show any right to recover any of the sums alleged in said petition as damages, or any portion of the same.' (6) The court erred in sustaining defendant's eighth special exception to plaintiff's petition, the exception being as follows: 'Defendant specially excepts to the entire petition because the remedy for the alleged acts on the part of the

defendant complained of as a breach is agreed upon in the contract, and plaintiff had no right to abandon the contract as contemplated therein for such cause, and because such acts as those complained of are not vital, and do not go to the foundation or essence of the contract, and compensation may be made therefor in damages.' "

Drew Pruit and L. A. Smith, for plaintiff in error.

W. B. Gano, for defendant in error.

Before PARDEE, McCORMICK, and SHELBY, Circuit Judges.

McCORMICK, Circuit Judge (after stating the facts as above). The rulings of the trial court, and the errors assigned thereon, present substantially two questions: (1) Can the plaintiff join in one action for damages for breach of the contract a claim for the loss of anticipated profits with the claim to recover his losses for actual outlay and expenditures? (2) Are the anticipated profits for the loss of which he claims damages in this case too remote to sustain an action? Conforming to the practice and pleadings in the state of Texas, the plaintiff's case is presented by a petition setting up fully all the facts on which he bases his claims for damage.

The first of the questions above stated seems to us to be answered by the reasoning and review of authorities in the opinion of the court in the case of U. S. v. Behan, 110 U. S. 338, 4 Sup. Ct. 81, 28 L. Ed. 168. Adopting substantially the language of the very learned judge who delivered that opinion, without quoting with literal accuracy, we observe that he therein says:

When a party injured by the stoppage of a contract elects to go for damages for the breach thereof, the first and most obvious damage to be shown is the amount which he has been induced to expend on the faith of the contract, including a fair allowance for his own time and services. "Unless there is some artificial rule of law which has taken the place of natural justice in relation to the measure of damages, it would seem to be quite clear that the claimant ought at least to be made whole for losses and expenditures. If he chooses to go further, and claim for the loss of anticipated profits, he may do so, subject to the rules of law as to the character of profits which may be thus claimed. It does not lie, however, in the mouth of the party who has voluntarily and wrongfully put an end to the contract, to say that the party injured has not been damaged, at least to the amount of what he has been induced fairly and in good faith to lay out and expend, including his own services. * * * At least, it does not lie in the mouth of the party in fault to say this unless he can show that the expenses of the party injured have been extravagant and unnecessary for the purpose of carrying out the contract. * * * The claim for profits, if not sustained by proof, ought not to preclude a recovery for the claim for losses sustained by outlay and expenses. In a proceeding like the present, in which the claimant sets up by way of petition a plain statement of the facts, without technical formality, and prays relief either in a general manner, or in an alternative or cumulative form, the court ought not to hold the claimant to strict technical rules of pleading, but should give to his statement a liberal interpretation, and afford him such relief as he may show himself substantially entitled to, if within the fair scope of the claim as exhibited by the facts set forth in the petition."

In the case of Dennis v. Maxfield, 10 Allen, 138, which presented a question closely analogous to the one we are now discussing, it is said in the opinion by the chief justice:

"The breach of the contract by the defendants has created only one cause of action in favor of the plaintiff. His compensation for this breach necessarily embraces all that he is entitled to recover under the contract. Indeed, his right

to recover anything—as well that which was earned before as that which would have been earned if he had not been discharged—depends on the question whether he has performed his part of the contract. A party cannot sever a claim for damages arising under one contract so as to make two distinct and substantive causes of action."

The second question presents more difficulty. We quote again from U. S. v. Behan, supra:

"The claimant was not bound to go for profits, even though he counted for them in his petition. He might stop upon a showing of losses. The two heads of damage are distinct, though closely related. When profits are sought, a recovery for outlay is included, and something more. That something more is the profits. If the outlay equals or exceeds the amount to be received, of course there can be no profits."

It is clear that the plaintiff and the defendant, in entering into the contract which is made the basis of this action, each had in contemplation not only the outlay of expenses and personal service to be contributed by the plaintiff, but, and equally, the earning of profits from the per cent. on the premiums to be allowed the plaintiff as his sole compensation for his expenditures and service. As was said in the case of Dennis v. Maxfield, supra:

"These earnings or profits were therefore within the direct contemplation of the parties when the contract was entered into. They are undoubtedly in their nature contingent and speculative, and difficult of ascertainment; but, being made by express agreement of the parties of the essence of the contract, we do not see how they can be excluded in ascertaining the compensation to which the plaintiff is entitled. Would it be a good bar to a claim for damages for breach of articles of co-partnership that the profits of the contemplated business were uncertain, contingent, and difficult of proof, and could it be held for this reason that no recovery could be had in case of a breach of such a contract? Or, in an action on a policy of insurance on profits, would it be a valid defense, in the event of loss, to say that no damages could be claimed or proved, because the subject of insurance was merely speculative, and the data on which the profits must be calculated were necessarily inadequate and insufficient to constitute a safe basis on which to rest a claim for indemnity? The answer is that in such cases the parties, having by their contract adopted a contingent, uncertain, and speculative measure of damages, must abide by it, and courts and juries must approximate as nearly as possible to the truth in endeavoring to ascertain the amount which a party may be entitled to recover on such a contract in the event of a breach. If this is not the rule of law, we do not see that there is any alternative short of declaring that where parties negotiate for compensation or indemnity in the form of an agreement for profits, or a share of them, no recovery can be had on such a contract in a court of law,—a proposition which is manifestly absurd."

In the case of Bagley v. Smith, 10 N. Y. 489, in which claim for damages for loss of profits by the wrongful dissolution of a partnership was sought, the judge who delivered the opinion of the court said:

"The object of commercial partnership is profit. This is the motive upon which men enter into the relation. The only legitimate beneficial consequence of continuing a partnership is the making of profits. The most direct and legitimate injurious consequence which can follow upon an unauthorized dissolution of a partnership is the loss of profits. Unless that loss can be made up to the injured party, it is idle to say that any obligation is imposed by a contract to continue a partnership for a fixed period. The loss of profits is one of the common grounds, and the amount of profits lost one of the common measures of the damages to be given upon a breach of contract."

In Insurance Co. v. Nexsen, 84 Ind. 347, it was held that, in a suit by an agent against an insurance company for damages resulting from his wrongful discharge during the existence of the contract, his recovery is not restricted merely to commissions on premiums collected prior to his dismissal, but may include the probable value of the renewals on policies obtained by him, upon which future premiums would, in the ordinary course of business, be received by the insurance company.

In Hitchcock v. Knights of Maccabees (Mich.) 58 N. W. 640, on a trial of an action against a mutual benefit society for breach of contract, the plaintiff showed that he was employed by the defendant to establish lodges in an exclusive territory, at his own expense, and what his proportion of the membership fees and per capita dues would have been, had he established the lodges established by defendant in his territory during the unexpired term for which he was employed, and the cost of like work he had already done. Held, that the question of his damages should have been submitted to the jury. In the opinion the court say:

"In case of a breach by plaintiff, defendant could perform the work, and recover as damages the difference between the price agreed upon and the cost of completion. In case of a breach by defendant, the profits lost constitute the legitimate measure of damages. The law is not so blind to justice as not to require the defendant to respond in damages, if there is any reasonable basis for their ascertainment. There is no presumption, legal or otherwise, that the plaintiff could not have completed the work. The defendant was satisfied with the success of the plaintiff. It is a fair presumption that he would have succeeded. It is a fair inference from the evidence that the defendant's officers broke the contract because of the success, and the belief that they could secure the accomplishment of the work cheaper, which they in fact did. The defendant took charge of the work which the plaintiff had done, and completed it. The defendant may not now say, 'It is true. I completed the work, but there is no certainty you could.' * * * It has been demonstrated not only that the work could be, but that it has been, done. It is a fair inference that it could have been done as well by the plaintiff as by the defendant. One element of damage is established by the contract, and the evidence from the defendant's own books, namely, the amount agreed to be paid, and the benefits reaped by it. The only other element is the cost of doing the work, which, deducted from the amount to be paid, would establish the profits. The expense of what plaintiff did is some evidence upon which to base a judgment of the expense of doing the rest of the work. If that be the only evidence as to the cost, and plaintiff can establish by experience that it is more difficult and expensive to accomplish the first part of the work than the last part, defendant cannot complain if the jury take that as a basis to determine the cost. On the contrary, such a basis would be favorable to the defendant; and, if this were the only basis, we think, under the circumstances of this case, it was sufficient to justify a submission of the case to the jury. He who breaks his contract may not deny to the injured party the fair inferences to be drawn from the part performed."

In Lewis v. Insurance Co., 61 Mo. 534, the action was to recover damages for breach of a contract by the provisions of which the plaintiff agreed to work exclusively for the insurance company for the term of five years, and also bound himself to work the territory with a full corps of energetic and reliable agents. He had all the authority of a general agent in soliciting insurance and collecting premiums. As a compensation for his services and expenditures, he was to have a certain per cent. on premiums, as specified in the con-

tract. The plaintiff was only permitted to conduct his agency about half the time agreed on by the stipulation; the defendant having voluntarily sold and transferred the whole of its business to another company, thereby discontinuing its business and depriving itself of the power to keep and perform its part of the contract. The court held that the inability of the defendant to continue its business was no excuse for its breach of the contract with the plaintiff, who could recover such damage as was done him by the breach. In the trial court he had been allowed to show how much he had realized during the existence of the contract, and the estimate in that verdict seems to have been placed upon the past actual earnings, together with the testimony of actuaries as to what probably would be the value of the renewals on policies already obtained. With reference to the admissibility and value of this testimony the court, in its opinion, says:

"A custom or usage has sprung up and exists with insurance companies by which adjustments are made as to the value and renewals of policies for any given length of time. By the use of statistical tables and comparisons, a remarkable degree of accuracy obtains; and, where a connection ceases between an agent and the company, it is the only mode of ascertaining or adjusting the agent's interest. The calculation by the actuary has been reduced to scientific principles, and it must be resorted to, else there would be a failure of justice, on one hand, or, on the other, the damages would be purely speculative."

Touching a further feature in the case, we find this language in the opinion:

"The plaintiff was permitted to show the amount of his collections from time to time from July 1, 1869, to March 1, 1872, and the amount of his commissions during that time, both in the aggregate and per month, on the average. These commissions were all paid, and it is evident from the amount of the verdict that the jury must have considered the commission on premiums for the above-named period as a fair criterion of what plaintiff would have earned in the future had the contract not been broken. Without some other evidence of the probable amount of the business, these damages would be too much of a speculative character. The new business might depend on various circumstances, and be affected by numerous contingencies; and these should be shown, as entering into the computation of damages."

In Mueller v. Spring Co. (Mich.) 50 N. W. 319, it was held that where the plaintiff had been constituted the defendant's sole agent for the sale of its mineral water for the period of one year, within a defined territory, and before the year expired the agency was transferred to another, the plaintiff's measure of damages was the profits he might have realized if defendant had not breached its contract, and that, in arriving at the amount of plaintiff's damage, proof of the actual sales of water by the new agent during the plaintiff's unexpired term would not be speculative. In this connection it is said in the opinion:

"While it may be true that Mueller could not have disposed of as much of the article as this firm did, yet the amount of their sales, while not conclusive upon defendant, was competent evidence to go to the jury upon the question of plaintiff's damages. It would have been proper to draw out upon cross-examination what special effort had been made by this firm to introduce and push this commodity, but the sales for the season named may have been greater than for the previous season, because of a demand created by what Mueller did, rather than by any special effort by this firm. Here was a commodity of which defendant was the sole proprietor, and for which Mueller was made sole agent. All of this commodity reaching the territory named

came from the defendant directly to Mueller, and through his agency. The agency of the firm of Bassett & L'Hommedieu succeeded that of Mueller. They took it up where he left off, and continued it for the five months for which he was to enjoy those fruits. Proof as to the amount actually sold by them for that five months cannot be said to be speculative."

The case of Wakeman v. Manufacturing Co., 101 N. Y. 205, 4 N. E. 264, bears so close an analogy to the case at bar, and the authority of that court is so high, as to justify our quoting from the opinion at considerable length:

"This action was brought to recover damages for the breach of an agreement made in the city of New York in February, 1878, which is set forth in the complaint as follows: 'That if the plaintiffs shall succeed in placing (that is to say, selling) fifty of the defendant's sewing machines to one firm or party in the republic of Mexico during the next trip of their agent to that country, then about to be made, they (the plaintiffs), for every fifty machines so sold, shall have the sole agency for the sale of the defendant's sewing machines in that locality and its vicinity in that republic; and the defendant should furnish to the plaintiffs machines at the lowest net gold prices.' The defendant denied the agreement, but the jury found it substantially as alleged, and it is conceded that we must assume here that such an agreement was made. The plaintiffs at once entered upon the performance of the agreement, purchased a sample machine of the defendant, caused their agent to be instructed in its mechanism and management, and then sent him to Mexico. After reaching there he sold fifty machines to one Mead, of San Luis Potosi, on his promise to Mead that he should be the general agent of the defendant for that locality and its vicinity. The order for the fifty machines was sent to the defendant and filled by it, and those machines were forwarded to Mexico and paid for. Shortly thereafter plaintiffs' agent made another sale of fifty machines for another locality in Mexico, and an order for those machines was sent to the defendant, which it absolutely refused to fill. Plaintiffs' agent procured another order for one machine, and sent that to the defendant, which it also refused to fill; and then it refused to fill any further orders from the plaintiffs or their agents, and absolutely refused to perform and repudiated its agreement. Upon the trial of the action the plaintiffs made various offers of evidence to show the value of their contract with the defendant, the most of which were excluded. In his charge to the jury the judge held, as matter of law, that the plaintiffs could recover damages only for the refusal of the defendant to fill the orders actually given; and, the plaintiffs' profits having been shown to be $4 on a machine, their recovery was thus limited to $204. They excepted to the rule of damages thus laid down, and the sole question for our determination is what, upon the facts of this case, was the proper rule of damages? Were the plaintiffs confined to the damages suffered by them in consequence of the refusal of the defendant to fill the two orders for fifty-one machines, or were they entitled also to recover the damages which they sustained by a total breach of the agreement on the part of the defendant? The judge limited the damages, as stated in his charge, because any further allowance of damages for the breach of the agreement would, as he claimed, be merely speculative and imaginary. It is frequently difficult to apply the rules of damages, and to determine how far and when opinion evidence may be received to prove the amount of damages, and the difficulty is encountered in a marked degree in this case. One who violates his contract with another is liable for all the direct and proximate damages which result from the violation. The damages must be not merely speculative, possible, and imaginary, but they must be reasonably certain, and such only as actually follow or may follow from the breach of the contract. They may be so remote as not to be directly traceable to the breach, or they may be the result of other intervening causes, and then they cannot be allowed. They are nearly always involved in some uncertainty and contingency. Usually they are to be worked out in the future, and they can be determined only approximately upon reasonable conjectures and probable estimates. They may be so uncertain, contingent, and imaginary as to be incapable of adequate proof; and then they cannot be recovered,

because they cannot be proved. But when it is certain that damages have been caused by a breach of contract, and the only uncertainty is as to their amount, there can rarely be good reason for refusing, on account of such uncertainty, any damages whatever for the breach. A person violating his contract should not be permitted entirely to escape liability because the amount of the damages which he has caused is uncertain. It is not true that loss of profits cannot be allowed as damages for a breach of contract. Losses sustained and gains prevented are proper elements of damage. Most contracts are entered into with the view to future profits, and such profits are in the contemplation of the parties, and, so far as they can be properly proved, they may form the measure of damage. As they are prospective, they must, to some extent, be uncertain and problematical, and yet on that account a person complaining of breach of contract is not to be deprived of all remedy. It is usually his right to prove the nature of his contract, the circumstances surrounding and following its breach, and the consequences naturally and plainly traceable to it; and then it is for the jury, under proper instructions as to the rules of damages, to determine the compensation to be awarded for the breach. When a contract is repudiated, the compensation of the party complaining of its repudiation should be the value of the contract. He has been deprived of his contract, and he should have in lieu thereof its value, to be ascertained by the application of rules of law which have been laid down for the guidance of courts and jurors. [The judge then reviews and cites a number of reported cases, and thereafter proceeds with his opinion.] It is quite clear that the rules of damages having the sanction of these authorities were violated upon the trial of this action. The plaintiffs had the right, under their agreement, to establish agencies for the sale of defendant's machines anywhere in Mexico where they could sell fifty machines. An agency, when thus established, was to be exclusive, and was to have some permanency. It could not be broken up at the will of the defendant, without some default on the part of the plaintiffs. That the agreement had some value to the plaintiffs is very clear, and of that value, whatever it was, they were deprived by the act of the defendant. It is quite true that that value, or, in other words, the damages caused to the plaintiffs by the total breach of the agreement by the defendant, is quite uncertain and difficult to be estimated. But the difficulty is not greater than it was in several of the cases above cited. There are some facts upon which a jury could base a judgment, not certain nor strictly accurate, but sufficiently so for the administration of justice in such a case. The agent whom plaintiffs sent to Mexico was apparently intelligent, capable, and well acquainted with Mexico. Machines could be delivered there for about $30 per machine, and could then be sold at retail for about $125. The profit of the plaintiffs on each machine was about $4. Plaintiffs' agents readily made sales of one hundred and one machines, and were about to make other sales. One of defendant's agents subsequently sold in a single city twenty machines in six months, at $125 each. The plaintiffs had established two agencies, and to the value of such agencies, at least, they were entitled. Mead, who had one of the agencies, testified that he had made arrangements with several parties to sell the machines; that he had all the facilities for carrying on an extensive and profitable business, and was well acquainted with the country. The population of several of the Mexican cities in which plaintiffs' agent was engaged in establishing agencies was shown. From all these and other facts proved, it cannot be doubted that the plaintiffs suffered damages to at least several hundred dollars, and they should not have been deprived of the damages which they made to appear because they could not make clear the full amount of their damages. All the facts should have been submitted to the jury, with proper instructions; and their verdict, not based upon mere speculation and possibilities, but upon the facts and circumstances proved, would have approached as near the proper measure of justice as the nature of the case and the infirmity which attaches to the administration of the law will admit."

From the nature of the case, the language of the contract, and all the dealings of the parties, it is clear that the provision naming 10 years from the date of the original contract, and afterwards extend-

ing it to 10 years from the 23d of March, 1896, is of the essence of the contract. It is equally apparent, from the same premises, that the provision which stipulated that the defendant company should not appoint other agents within the manager's territory, unless he neglected or refused to thoroughly develop and work the same, is likewise of the essence of the contract between these parties. It follows, therefore, that if the proof supports the plaintiff's allegation as to his faithful performance of his covenants in the contract up to December ——, 1896, the action of the defendant at that date in employing other agents and agencies to work the territory 'assigned to the plaintiff was a breach of the contract on the part of the defendant which rendered the defendant liable for such damages as directly resulted therefrom. Assuming that the alleged breach of the contract is supported by the proof, the plaintiff having elected to go for damages for the breach of the contract, the first and most obvious damage to be shown is the amount which he has been induced to expend on the faith of the contract, including a fair allowance for his own time and services; and it does not lie in the mouth of the defendant to say that he has not been damaged at least to that amount, unless it can show that the expenses which the plaintiff incurred were extravagant and unnecessary for the purpose of carrying out the contract. On reason and authority, we are of opinion that the plaintiff may, as he does, seek to recover for loss of profits. The law no more than equity will endure the thought that it was in the contemplation of the defendant that the plaintiff should work for naught; and, as the contract expressly provides that he shall get no compensation other than the specified rate of per cent. on the first and subsequent premiums on the policies of insurance issued, it was necessarily in the contemplation of the parties that a breach of the contract upon the part of the defendant would inflict upon the plaintiff this loss of profits. As the recitals in the judgment plainly show, the case went off in the circuit court substantially on the demurrer to the petition. The record of the judgment indicates that probably no testimony was offered by either party, and, if testimony was in fact heard, it is certain that the judge did not reach a consideration of it, because the case, as it was made in the pleadings, did not, according to his view thereof, present a cause of action. It is likely that his oral announcement in passing on exception 7 so clearly indicated to the parties that the issues made by the exceptions would, in the court's judgment, conclude the plaintiff's right to recover, that it induced the parties to make and file the stipulation waiving a jury on that trial. It appearing so distinctly that the judge did not reach such a consideration of the case as required or permitted him to pass on the issues of fact made by the pleadings, we have to assume, as his action does assume, that all the allegations of the plaintiff with reference to his performance of the contract and the defendant's breach thereof are true. This being so, the plaintiff is entitled to recover the value of his contract at the time of the breach. The parties, having contracted in contemplation of the plaintiff making profits to compensate him for his outlay and personal service, have themselves stipulated the standard for fixing such profits on the work contracted to be done; thus

leaving as the only uncertain element in the investigation the amount of work actually done, or which the plaintiff with reasonable probability might and would have done but for the breach of the contract by the defendant.

This inquiry in this case has two branches: First, to find the amount of profit which the plaintiff, under the stipulations of the contract, is entitled to receive on all premiums subsequent to the premium for the first year on the policies actually written through the agency of the plaintiff and his employés prior to the date of the breach of the contract by the defendant. It is evident that all the schemes of insurance referred to in the contract to be offered to the public contemplated the keeping of the policies alive by payments made from time to time subsequent to the first year's premium. Between the parties to the contract, the presumption is that the policies would be kept alive, and these subsequent payments—"renewal premiums," as they are called—would be received by the defendant company. The conduct of that company in breaching the contract entitles the plaintiff to this presumption, and puts upon the defendant the burden of showing the contrary, if it exists, and the extent to which it does exist. So all uncertainty is eliminated from this branch of the plaintiff's claim for loss of profits. As to the other branch, assuming, as we must for the present do, that the defendant breached the contract as alleged in the petition, entered the territory allotted to the plaintiff, and has through other agents and agencies since the date of the breach written a large amount of other insurance, such as the contract between the parties contemplated would be obtained by and through the action of the plaintiff and his sub-agents, the amount of such insurance so taken and carried by the defendant up to the time of the trial may be exactly shown by the testimony of the managing agents of the defendant, or by its books, or by both, which at this day the plaintiff has a right to call for and demand as well in an action at law as formerly in a suit in equity. There can be, therefore, no substantial difficulty in arriving at this amount, at least with substantial accuracy; and, the amount having been found, the terms of the contract between the parties fix the standard for measuring the interest which the plaintiff would have had therein, had he been permitted to do the work as his contract contemplated. Whether he could, and with reasonable probability would, have done all or a definite portion of this work, had the defendant not breached the contract, is a proper subject for the finding of a jury on the proof that may be offered as to the means which the plaintiff had organized and was using for the efficient prosecution of this work, compared with the means and effort which the defendant has used in its accomplishment of the work so done by it in the territory allotted to the plaintiff. He is not necessarily or even probably entitled to receive the full specified rate of per cent. on the first year's and subsequent premiums paid and to be paid on policies so issued by the defendant through its other agents and agencies; for some deduction must necessarily be made on account of the fact that he could incur no current expenses, nor render any personal service, in the procurement of this insurance thus obtained by the defendant through

its other agents and agencies. The condition of the business in Texas at the time of the breach; the means that had been used and were being used by the plaintiff to work the territory allotted to him; the machinery which he had organized for the purpose of that work; the reasonable cost of its continued operation; the extent of the territory allotted to him; the number of persons therein who were fit subjects for such insurance as the defendant proposed to write; the reasonable relative proportion of cost for the first year of organizing the business and putting it in operation, to the cost of continuing its conduct during the subsequent years; the machinery actually used by the defendant after it entered the territory allotted to the plaintiff, and its success, through the use of this machinery and the agencies it established, in obtaining applicants for insurance and holders for its policies,—should all be given to the jury, under the proper instructions of the court, that the panel of 12 reasonable men, in the effort to do justice between the parties, may find, from a full consideration of the relations of the parties, and their respective relations to the work, as shown by the proof, the reasonable amount of damage that the plaintiff has suffered by the defendant's breach of the contract. This indication of the elements of proof to be admitted in the case is not, and is not intended to be, exhaustive. Other kindred matter may and doubtless will be offered. The subject is not one for what is technically called "expert testimony." Witnesses should not be permitted to give what may properly be called "opinion evidence" as to the value of the contract at the date of its breach. Where, however, witnesses have had actual experience in the transaction of such business, their testimony as to the particulars and result of that experience is not necessarily "opinion evidence," within the meaning of the term as here used, but may be direct evidence to a substantial fact bearing directly upon the issues here involved,—as, for instance, the showing of the reasonable expectancy of continuing in force a definite proportion of the amount of insurance issued on the various schemes or classes of insurance contemplated in the contract between these parties to have been issued by the defendant. The aggregate amount of damage, if any, found by the jury on both branches of this inquiry, must exceed the amount of the plaintiff's outlay of capital and personal service, as hereinbefore indicated, in order to show any recoverable profits lost to the plaintiff; for if that outlay was made in good faith, and is not shown by the defendant to have been extravagant and unnecessary for the purpose of carrying out the contract, it must be recoverable in any event. Assuming, as we have said we must for the purpose of this hearing, that the proof will support the allegations of the petition in reference to the breach of the contract by the defendant, unless the loss of profits as found by the jury shall exceed this amount for outlay and personal service, the plaintiff can make no further recovery on the basis of loss of profits. If, however, the jury find that by the breach of the contract the plaintiff has suffered loss of profits to an amount in excess of the amount that the proof shows he is entitled to recover for outlay of personal service and expenses, he may, in addition thereto, recover such excess of damages so incurred and found by the jury on account of his loss of

profits. Of course, if the proof does not support the plaintiff's allegations as to his performance of the covenants binding him in the contract, then no breach thereof by the defendant has been shown, and the plaintiff can have no recovery in this action.

We are of opinion that the views we have here expressed are supported by the cases of high authority which we have partially reviewed in the foregoing opinion, and the many citations of other precedents to which the cases we have reviewed refer, many of which we have carefully examined. Our decision is, therefore, that the judgment of the circuit court is reversed, and the cause remanded to that court, with directions to it to award the plaintiff a new trial, and thereafter to proceed according to law, and in conformity to the views expressed in this opinion.