## UNITED STATES *v.* BEHAN.

APPEAL FROM THE COURT OF CLAIMS.

Submitted December 18th, 1883.—Decided February 4th, 1884.

*Contract—Damages—Estoppel.*

When one party enters upon the performance of a contract, and incurs expense therein, and being willing to perform, is, without fault of his own, prevented by the other party from performing, his loss will consist of two distinct items of damage: 1st, his outlay and expenses, less the value of ma-

terials on hand ; 2d, the profits he might have realized by performance; which profits are related to the outlays and include them and something more. The first item he may recover in all cases, unless the other party can show the contrary; and the failure to prove profits will not prevent him from recovering it. The second he may recover when the profits are the direct fruit of the contract, and not too.remote or speculative.

In an action for breach of a contract by wrongfully putting an end to it, the party committing the wrong is estopped from denying that the other party has been damaged to the extent of his actual loss and outlay fairly incurred.

If, in a suit in the Court of Claims for breach of contract by the United States by preventing the petitioner from performing his contract, the petition prays judgment for damages arising from the loss of profits, and also for outlay and expenses, the petitioner may recover for such part of the outlay and expenses as he may prove, although he may fail to establish that there would have been any profits.

If a party injured by the stoppage of a contract elects to rescind the contract, he cannot recover either for outlay or for loss of profits; but only for the value of services actually performed, as upon a quantum meruit.

The case is stated in the opinion of the court.

*Mr. Solicitor-General* (*Mr. John S. Blair* was with him) for appellant.

*Mr. J. W. Douglass* for appellee.

MR. JUSTICE BRADLEY delivered the opinion of the court.

Behan, the appellee and claimant, filed a petition in the court below, setting forth that on the 26th of December, 1879, one John Roy entered into a contract with C. W. Howell, major of engineers of the United States army, to make certain improvements in the harbor of New Orleans (describing the same), and that the claimant and two other persons named became bondsmen for the faithful performance of the work; that on February 10th, 1881, the contract with Roy was annulled by the engineer office, and the bondsmen were notified that they had a right to continue the work under the contract if they desired to do so, and that the claimant complied with this suggestion and undertook the work; that he went to great expense in providing the requisite machinery, materials, and labor for fulfilling the contract, but that in September, 1881, it being found, by the report of a board of engineers, that the plan of improve-

ment was a failure, without any fault of the claimant, the work was ordered to cease; that thereupon the claimant stopped all operations, and disposed of the machinery and materials on hand upon the best terms possible, and sent to the War Department an account of his outlay and expenses, and the value of his own time, claiming as due to him, after all just credits and off-sets, the sum of $36,347.94, for which sum he prayed judgment.

The claimant afterwards filed an amended petition, in which the various transactions, and his operations under the contract, were set forth in greater detail, showing amongst other things, that the amount of his expenses for machinery and tools, for materials, and for labor and operations carried on, after deducting the proceeds realized from the sale of the plant remaining when the work was suspended, amounted to the sum of $33,192.90. The petition further alleged that the claimant could have completed the work contemplated by the contract by a further expense of $10,000, and that the amount which would then have been due therefor would have been $52,000, leaving a profit to him of $8,807.10.

The petition concluded as follows:

"Your petitioner therefore respectfully shows that his reasonable and necessary expenditures upon the work above described amounted to $33,192.90, which sum represents the losses actually sustained by petitioner by reason of the defendants' breach of the contract. And petitioner further sets forth that the reasonable and legitimate profits which he might have obtained but for the said breach of contract may be properly computed at $8,807.10, assuming $52,000 as the amount to be paid for the completed work. And petitioner further shows that he has not received one dollar from the defendants on account of said work, but that his claim and accompanying accounts, presented to the engineer department, have been transmitted to this court by the Secretary of War.

"Your petitioner therefore alleges that he is entitled to receive from the United States the sum of forty-two thousand dollars ($42,000) over and above all just credits and offsets. Wherefore he prays judgment for that amount."

The Court of Claims found the material facts to be substan-

tially as stated in the petition. The contract of Roy is set forth in full in the findings, from which it appears that the contracting party was required to furnish and lay down an artificial covering of cane-mats over the sloping portion of the river-bed of the Mississippi in front of the third district of New Orleans, to extend outward to a depth in the river not exceeding 100 feet, and to be paid therefor at the rate of 65 cents per square yard. The court finds that Roy prosecuted the work under the contract during the year 1880, but his progress not being satisfactory to the engineer officers, the contract was formally annulled, and the bondsmen notified as stated in the petition. In March, 1881, Behan, the claimant, gave notice to Major Howell that he would undertake the work, and at his request the major gave him a description of the work to be done, estimated as not exceeding 77,000 or 80,000 square yards, which, at the contract price, would amount to from $50,000 to $52,000. The court further finds as follows:

"The contract was of such a character as to require extensive preparations and a large initial expenditure. The claimant made the necessary preparations for carrying on the work to completion and in procuring boats, tools, materials, and apparatus for its prosecution. He engaged actively in carrying out the contract on his part, incurred large expenditure for labor and materials, and had for some time proceeded with the work when the undertaking was abandoned by the defendants and the work stopped without fault of the claimant, as set forth in the following letters."

Then follows a copy of correspondence between the officers and the department of engineers, showing that a board of engineer officers was appointed to examine and report upon the plan of improvement under which the work of the claimant was being carried on, and that this board, on the 23d of September, 1881, reported their unanimous opinion that the object sought to be accomplished by the improvement had not been attained, and that under the then existing plan of operations, it could not be attained. On the 29th of September, 1881, the claimant received notice to discontinue the work, which he did at once, and gave Major Howell notice to that effect, and called his

attention to the exposed situation of the machinery, materials, and other property on hand, and requested instructions respecting the same. No instructions appear to have been given. The court then finds as follows :

"The claimant thereupon closed up his work and sold the materials which he had on hand. Nothing has been paid to him for work, materials, or losses.

"The actual and reasonable expenditures by the claimant in the prosecution of his work, together with his unavoidable losses on the materials on hand at the time of the stoppage by the defendants, were equal to the full amount claimed therefor in his petition, $33,192.20.

"It does not appear from the evidence thereon on the one side and the other whether or not the claimant would have made any actual profit over and above expenditures, or would have incurred actual loss had he continued the work to the end and been paid the full contract price therefor.

"CONCLUSION OF LAW.

"Upon the foregoing findings of facts the court decides as a conclusion of law that the claimant is entitled to recover the sum of $33,192.20."

The government has appealed from this decree and complains of the rule of damages adopted by the court below. Counsel contend that, by making a claim for profits, the claimant asserts the existence of the contract as opposed to its rescission ; and that in such case, the rule of damages, as settled in *Speed's Case*, 8 Wall. 77, is "the difference between the cost of doing the work and what claimants were to receive for it, making reasonable reduction for the less time engaged, and for release from the care, trouble, risk, and responsibility attending a full execution of the contract." And when such a claim is made, they contend that the burden of proof is on the claimant to show what the profits would have been ; and as the Court of Claims expressly finds that it does not appear from the evidence whether or not the claimant would have made any profits, or would have incurred loss, therefore the

claimant was not entitled to judgment for any amount whatever.

The manner in which this subject was viewed by the Court of Claims is shown by the following extract from its opinion:

" Whatever rule may be adopted in calculating the damages to a contractor when, without his fault, the other party, during its progress, puts an end to the contract before completion, the object is to indemnify him for his losses sustained and his gains prevented by the action of the party in fault, viewing these elements with relation to each other. The profits and losses must be determined according to the circumstances of the case and the subject-matter of the contract. The reasonable expenditures already incurred, the unavoidable losses incident to stoppage, the progress attained, the unfinished part, and the probable cost of its completion, the whole contract price, and the estimated pecuniary result, favorable or unfavorable to him, had he been permitted or required to go on and complete his contract, may be taken into consideration. *Sickels' Case,* 1 C. Cls. R. 214 ; *Speed's Case,* 2 C. Cls. R. 429 ; affirmed on appeal, 8 Wall. 77, and 7 C. Cls. R. 93 ; *Wilder's Case,* 5 C. Cls. R. 468 ; *Bulkley's Case,* 7 C. Cls. R. 543 ; 19 Wall. 37 ; and 9 C. Cls. R. 81 ; *Parish's Case,* 100 U. S. 500 ; *Field's Case,* 16 C. Cls. R. 434 ; *Moore & Krone's Case,* 17 C. Cls. R. 17; *Power's Case,* 18 C. Cls. R. 493; *Masterson* v. *Mayor, &c., of Brooklyn,* 7 Hill, 61.

" The amount of the claimant's unavoidable expenditures and losses already incurred are set forth in the findings. But we can give him nothing on account of prospective profits, because none have been proved. So, for the same reason, we can deduct nothing from his expenditures on account of prospective losses which he might have incurred had he not been relieved from completing his contract. This leaves his expenditures as the only damages proved to have resulted to him from the defendants' breach of contract, and they are, therefore, the proper measure of damages under all the circumstances of the case."

We think that these views, as applied to the case in hand, are substantially correct. The claimant has not received a dollar, either for what he did, or for what he expended, except the proceeds of the property which remained on his hands when

the performance of the contract was stopped. Unless there is some artificial rule of law which has taken the place of natural justice in relation to the measure of damages, it would seem to be quite clear that the claimant ought at least to be made whole for his losses and expenditures. So far as appears, they were incurred in the fair endeavor to perform the contract which he assumed. If they were foolishly or unreasonably incurred, the government should have proven this fact. It will not be presumed. The court finds that his expenditures were reasonable. The claimant might also have recovered the profits of the contract if he had proven that any direct, as distinguished from speculative, profits would have been realized. But this he failed to do; and the court below very properly restricted its award of damages to his actual expenditures and losses.

The *prima facie* measure of damages for the breach of a contract is the amount of the loss which the injured party has sustained thereby. If the breach consists in preventing the performance of the contract, without the fault of the other party, who is willing to perform it, the loss of the latter will consist of two distinct items or grounds of damage, namely: first, what he has already expended towards performance (less the value of materials on hand); secondly, the profits that he would realize by performing the whole contract. The second item, profits, cannot always be recovered. They may be too remote and speculative in their character, and therefore incapable of that clear and direct proof which the law requires. But when, in the language of Chief Justice Nelson, in the case of *Masterson* v. *Mayor of Brooklyn*, 7 Hill, 69, they are "the direct and immediate fruits of the contract," they are free from this objection; they are then "part and parcel of the contract itself, entering into and constituting a portion of its very elements; something stipulated for, the right to the enjoyment of which is just as clear and plain as to the fulfilment of any other stipulation." Still, in order to furnish a ground of recovery in damages, they must be proved. If not proved, or if they are of such a remote and speculative character that they cannot be legally proved, the party is confined to his loss of actual outlay and expense. This loss, however, he is clearly entitled to re-

cover in all cases, unless the other party, who has voluntarily stopped the performance of the contract, can show the contrary.

The rule as stated in Speed's case is only one aspect of the general rule. It is the rule as applicable to a particular case. As before stated, the primary measure of damages is the amount of the party's loss; and this loss, as we have seen, may consist of two heads or classes of damage—actual outlay and anticipated profits. But failure to prove profits will not prevent the party from recovering his losses for actual outlay and expenditure. If he goes also for profits, then the rule applies as laid down in Speed's case, and his *profits* will be measured by "the difference between the cost of doing the work and what he was to receive for it," &c. The claimant was not bound to go for profits, even though he counted for them in his petition. He might stop upon a showing of losses. The two heads of damage are distinct, though closely related. When profits are sought a recovery for outlay is included and something more. That something more is the profits. If the outlay equals or exceeds the amount to be received, of course there can be no profits.

When a party injured by the stoppage of a contract elects to rescind it, then, it is true, he cannot recover any damages for a breach of the contract, either for outlay or for loss of profits; he recovers the value of his services actually performed as upon a *quantum meruit*. There is then no question of losses or profits. But when he elects to go for damages for the breach of the contract, the first and most obvious damage to be shown is, the amount which he has been induced to expend on the faith of the contract, including a fair allowance for his own time and services. If he chooses to go further, and claims for the loss of anticipated profits, he may do so, subject to the rules of law as to the character of profits which may be thus claimed. It does not lie, however, in the mouth of the party, who has voluntarily and wrongfully put an end to the contract, to say that the party injured has not been damaged at least to the amount of what he has been induced fairly and in good faith to lay out and expend (including his own services), after mak-

ing allowance for the value of materials on hand; at least it does not lie in the mouth of the party in fault to say this, unless he can show that the expenses of the party injured have been extravagant, and unnecessary for the purpose of carrying out the contract.

It is unnecessary to review the authorities on this subject. Some of them are referred to in the extract made from the opinion of the court below; others may be found referred to in Sedgwick on the Measure of Damages, in Smith's Leading Cases, vol. 2, p. 36, &c. (notes to *Cutter* v. *Powell*); Addison on Contracts, §§ 881, 897. The cases usually referred to, and which, with many others, have been carefully examined, are *Planché* v. *Colburn*, 5 C. & P. 58; *S. C.* 8 Bing. 14; *Masterson* v. *Mayor, &c., of Brooklyn*, 7 Hill (N. Y.), 61; *Goodman* v. *Pocock*, 15 A. & E. 576; *Hadley* v. *Baxendale*, 9 Excheq. 341; *Fletcher* v. *Tayleur*, 17 C. B. 21; *Smeed* v. *Ford*, 1 El. & El. 602; *Inchbald* v. *Western, &c., Coffee Company*, 17 C. B. N. S. 733; *Griffen* v. *Colver*, 16 N. Y. 489; and the case of *United States* v. *Speed*, before referred to.

It is to be observed that when it is said in some of the books, that where one party puts an end to the contract, the other party cannot sue on the contract, but must sue for the work actually done under it, as upon a *quantum meruit*, this only means that he cannot sue the party in fault upon the stipulations contained in the contract, for he himself has been prevented from performing his own part of the contract upon which the stipulations depend. But surely, the wilful and wrongful putting an end to a contract, and preventing the other party from carrying it out, is itself a breach of the contract for which an action will lie for the recovery of all damage which the injured party has sustained. The distinction between those claims under a contract which result from a performance of it on the part of the claimant, and those claims under it which result from being prevented by the other party from performing it, has not always been attended to. The party who voluntarily and wrongfully puts an end to a contract and prevents the other party from performing it, is estopped from denying that the injured party has not been

damaged to the extent of his actual loss and outlay fairly incurred.

The particular form of the petition in this case ought not to preclude the claimant from not recovering what was fairly shown by the evidence to be the damage sustained by him. Though it is true that he does pray judgment for damages arising from loss of profits, yet he also prays judgment for the amount of his outlay and expenses less the amount realized from the sale of materials on hand. The claim for profits, if not sustained by proof, ought not to preclude a recovery of the claim for losses sustained by outlay and expenses. In a proceeding like the present, in which the claimant sets forth, by way of petition, a plain statement of the facts without technical formality, and prays relief either in a general manner, or in an alternative or cumulative form, the court ought not to hold the claimant to strict technical rules of pleading, but should give to his statement a liberal interpretation, and afford him such relief as he may show himself substantially entitled to if within the fair scope of the claim as exhibited by the facts set forth in the petition.

We think that the judgment of the Court of Claims was right, and it

*Is affirmed.*