[L. A. No. 19355. In Bank. Oct. 1, 1946.]

W. H. WOODBINE, Respondent, v. H. R. VAN HORN, Appellant.

J. La Marr Butler, A. H. Brazil and William J. Clark for Appellant.

Leo B. Ward, John M. Hines and John A. Holland for Respondent.

EDMONDS, J.—W. H. Woodbine's action for conversion is based upon a memorandum in writing signed by him and H. R. Van Horn concerning the sale of cord wood. As grounds for the reversal of the judgment in favor of Woodbine, Van Horn attacks the trial court's construction of the agreement and also the measure applied in fixing the amount of damages.

The complaint is in four counts. The first count pleaded the writing as being in these words: ''For and in consideration of the promises and agreement of the parties hereto, and of the moneys paid and to be paid as hereafter set out, H. R. Van Horn, hereby sells and conveys to W. H. Woodbine, all

of the eucalyptus wood located on the property [described] . . . , consisting of three thousand or more cords, to be cut in sixteen and twenty four inch lengths and all wood over five inches in diameter to be split, at the purchase price of nine ($9.00) dollars per cord, delivered F O B trucks of W. H. Woodbine. A statement is to be rendered by Woodbine to Van Horn of the number of cords of wood received by him during each month and payment therefor to be made ten days thereafter. Should advances be made to Van Horn by Woodbine the same shall be credited to wood delivered. Should wood of different lengths be required by Woodbine the price to be adjusted by the parties. Should any of such wood be sold by Woodbine to the U. S. Government an additional sum per cord to be paid to Van Horn as may be agreed upon by the parties.''

Woodbine alleged that he was the owner of all the eucalyptus wood, consisting of 6,000 or more cords located on the property described in this writing, of the value of $26 per cord and that Van Horn converted 500 cords of the wood to his own use, to Woodbine's damage in the sum of $8,500. Upon information and belief, the pleader asserted that Van Horn was insolvent, that cord wood of the size and kind specified in the memorandum could not be purchased on the market and that an injunction was necessary to avoid a multiplicity of suits. In conclusion, Woodbine claimed that he had no speedy or adequate remedy at law and would suffer irreparable damage unless Van Horn was restrained from disposing of the wood.

As a second cause of action, Woodbine stated that Van Horn refused to deliver the wood or to permit the removal of any of it. Approximately 400 cords of wood had been cut and split into 16 and 24-inch lengths. By reason of the refusal to deliver, Woodbine had been damaged in the sum of $156,000, being the difference between the market price and the contract price.

The third count set out that, by the terms of the writing, Van Horn was required to load the wood f.o.b. the plaintiff's trucks. From and after the 1st of February, 1944, Van Horn refused to furnish more than one man for loading work, and it became necessary for Woodbine to hire and pay for labor to do this, to his damage in the sum of $353.59. On the 21st day of March, 1944, the complaint continued, Woodbine had a truck upon the premises where the wood was located, ready

and waiting to be loaded, but Van Horn refused to load it or to permit Woodbine's employees to do so. The truck remained there about 50 hours, and then returned to Los Angeles. At the reasonable rental value of $4 per hour, Woodbine sustained damages in the amount of $244.

As the last count of the complaint, Woodbine alleged that he advanced $2,500 to Van Horn to be applied upon the purchase price of the wood. Nevertheless, Van Horn refused to deliver any of it except 242⅔ cords, leaving a balance due of $316.

Upon these facts, Woodbine prayed for injunctive relief and for judgment in the amounts of $8,500, $156,000, $597.59, and $316, upon the respective counts of the complaint.

By his answer, Van Horn admitted the execution of the writing set out in the complaint, but he denied that Woodbine was the owner of the wood, or that there were 6,000 cords on the property, or that it had a market value of $26 per cord. Its market value was $9.00 per cord, he alleged, and at the time the memorandum was signed, only 3,000 cords of wood were on the property. Van Horn also denied that he converted 500 cords of the wood to his own use, or that he unlawfully threatened to convert the remaining wood, or that he was insolvent and not able to respond in damages, or that Woodbine would suffer irreparable damages. Moreover, an injunction should not be granted, Van Horn pleaded, because he was the owner of the goods.

As a defense to the second cause of action, Van Horn asserted that the agreement between the parties was intended to be used for the purpose of deceiving and defrauding him by inducing him to deliver wood in a quantity which Woodbine would claim to be less than that received. On May 21st, Woodbine allowed full cordage on two loads, but Van Horn refused to load the truck without a statement that full cordage was allowed on all four loads previously sent. Van Horn received no reply to his request for telegraphic confirmation of the amount delivered. Also, the wholesale market value of the wood was only $9.00 a cord.

The answer to the third cause of action specifically denied that the instrument was binding upon the parties, or that it required Van Horn to load the wood on Woodbine's trucks. There was also a denial of any damage suffered by reason of the facts stated in the complaint. The fourth cause of action

was answered with the assertion that wood having a market value of $2,500 had been delivered to Woodbine and an admission that Woodbine had paid $2,500 on account of wood delivered and to be delivered to him.

As a separate defense to each cause of action, Van Horn alleged that Woodbine conceived and devised a plan to cheat and defraud him and the written instrument was executed pursuant to this plan; also that certain misrepresentations made by Woodbine had induced Van Horn to enter into the contract. Van Horn also alleged that, through mistake, the written instrument failed to express the real intent of the parties.

In addition to his answer, Van Horn filed a cross-complaint for a declaratory judgment that the instrument is void. He also asked that the agreement be rescinded upon the grounds of misrepresentation and fraud, and sought $15,500 damages by reason of the alleged improper issuance of the injunction. In answer to this cross-complaint, Woodbine denied its material allegations and, as separate defenses, pleaded that the counts did not state facts sufficient to state a cause of action, that there was part performance of the contract and that Van Horn was estopped to assert its invalidity.

With the issues thus framed the action proceeded to trial. There is a sharp conflict between the testimony of Van Horn and his wife on the one hand and Woodbine on the other as to the statements and representations which preceded and accompanied the execution of the instrument which is the basis of the controversy. According to Van Horn, the preliminary negotiations concerned the price and size of the wood, an agreement of Woodbine to advance $5,000, and his promise to furnish a team of mules and a workman to split logs. There was also conflicting testimony as to whether the words in the agreement, "For and in consideration of the promises and agreements of the parties hereto," referred to certain previous oral agreements of the parties. Another matter of controversy centered upon the date when the writing was signed. The attorney for Woodbine, who drew the document, testified as to conversations made contemporaneously with the execution of the instrument relating to the amount of wood contemplated by the parties and other provisions. And according to Van Horn, after the agreement was signed Woodbine again promised to provide a team of mules and a workman.

Six months after the contract went into effect, in answer to a letter from Woodbine, Van Horn admitted that he was selling wood locally and that he expected to continue such sales. He also stated in this letter that only half of the wood which was the subject of the agreement belonged to him and he was only selling his own wood. It appears that for several months there were controversies between the parties as to the method which should be used in stacking the wood, asserted shortages due to different methods of computation, and the person who was to furnish the men to load the wood. Finally, on March 21st, Van Horn refused to load Woodbine's trucks.

Concerning the market value of the wood, one witness testified that its wholesale market value at the date of the alleged conversion was $10 a cord f.o.b truck. By other testimony the value was placed at between $12 and $14 a cord. However, the wholesale ceiling price was $20 a cord. The wood on the premises at the time of the execution of the agreement was about 4,000 cords, and 3,526 cords remained.

After hearing the evidence, the court concluded that there was a valid contract of sale and gave Woodbine judgment upon all four counts. However, it determined that Van Horn converted only 159 cords of wood, to the buyer's damage of $159. As to the second count, the court found that the contract covered aproximately 4,000 cords of fallen wood, that 3,526 cords of cut wood remained on the property, and that Van Horn had converted it to his own use. The market value of the wood at the time of filing the complaint and at the time of trial was $10 per cord, f.o.b. Woodbine's trucks, the court continued, and since the difference between the purchase price and market value was $1.00 per cord, the buyer was damaged in the further sum of $3,526 by reason of Van Horn's refusal to deliver the wood as required by the contract. The finding upon the third count was that by reason of the failure to load the truck, Woodbine was damaged in the sum of $204. As to the last cause of action, the court found that the buyer had advanced $2,500 to be applied upon the purchase price of wood to be delivered under the terms of the contract, that he received 246⅓ cords at the cost price of $2,217, and that the balance owing on the advance was $283. The findings were against Van Horn as to his separate defenses and cross-complaint and the preliminary injunction was continued in

force, but modified to the extent of enjoining him from removing or disposing of 500 cords of wood. The appeal is from the judgment entered upon these findings and from an order denying a new trial.

As grounds for the reversal of the judgment, Van Horn asserts that the instrument sued upon created a contract to sell as distinguished from a sale, and that the instrument is void for uncertainty and lack of mutuality. In interpreting an agreement, particular words must be considered in connection with the rest of the agreement, Van Horn contends, and the uncertainties are to be resolved most strongly against Woodbine, who caused them to exist. The appellant also argues that Woodbine did not expressly promise that he would send trucks to remove the wood within any definite time or to do anything, and the contract is void because the quantity to be delivered is conditioned by the will, wish or want of Woodbine. Moreover, he declares, the provisions in the contract that if wood of different lengths should be required by Woodbine, and if the wood were sold to the federal government, the price should be adjusted by the parties, creates an uncertainty.

Other contentions of Van Horn are that the findings, being inconsistent, unsupported by the evidence, and permeated with legal conclusions and evidentiary matters are insufficient to support the judgment. Furthermore, the court erred in determining the measure of damages and also in receiving the testimony of an alleged expert. He lays great stress upon the testimony of Woodbine as so wanting in integrity that it does not afford a valid basis for a judgment. In conclusion, says the appellant, the injunction restraining him from disposing of the wood is contrary to the most fundamental principles of equity jurisprudence.

By the use of the words "sells and conveys," Woodbine asserts, the parties intended that title to the goods should pass to the buyer. The contract is not uncertain, nor lacking in mutuality, he maintains, and as evidence was received interpreting the contract, the construction placed upon the instrument by the findings and the judgment binds the appellate court. Any errors in fixing the damages resulted from the court's adoption of the theory proposed by the seller rather than that of the buyer. The testimony of Woodbine is not wanting in integrity, nor did the court err receiving the testimony of the expert. Moreover, the order granting a prelimi-

nary injunction was proper and as no motion to dissolve it was made nor an appeal taken from the ruling, it is now final.

A contract must receive such an interpretation as will make it lawful, operative, definite, reasonable and capable of being carried into effect, if this can be done without violating the intention of the parties. (Civ. Code, §§ 1643, 3541; see, Rest., Contracts, § 236(a).) ▮ When the language employed is fairly susceptible of either one of two constructions contended for, extrinsic evidence may be resorted to for the purpose of explaining the intention of the parties. A contract may be explained by reference to the circumstances under which it was made, and the matter to which it relates. Also, for this purpose, conversations between and declarations of the parties during the negotiations at and before the execution of the contract may be shown. (Civ. Code, § 1647; Code Civ. Proc., § 1860; *Walsh* v. *Walsh,* 18 Cal.2d 439, 444 [116 P.2d 62]; *Wachs* v. *Wachs,* 11 Cal.2d 322, 326 [79 P.2d 1085]; *First Nat. Bank* v. *Bowers,* 141 Cal. 253, 262 [74 P. 856]; see, Rest., Contracts, § 235(d), 242.) ▮ Furthermore, a construction given the contract by the acts and conduct of the parties with knowledge of its terms, before any controversy has arisen as to its meaning, is entitled to great weight and will, when reasonable, be adopted and enforced by the court. (*Johnston* v. *Landucci,* 21 Cal.2d 63, 71 [130 P.2d 405, 148 A.L.R. 1355]; *Mitau* v. *Roddan,* 149 Cal. 1, 14 [84 P. 145, 6 L.R.A. N.S. 275]; *Keith* v. *Electrical Engineering Co.,* 136 Cal. 178, 181 [68 P. 598]; see, Rest., Contracts, § 235(e).) ▮ Another important rule of interpretation is that which favors a construction of a contract as bilateral, affording protection to both parties, rather than unilateral. (*Davis* v. *Jacoby,* 1 Cal.2d 370, 379 [34 P.2d 1026]; see, Rest., Contracts, § 31.) ▮ And when these aids to construction are properly resorted to, upon appeal the trial court's construction of the instrument is ordinarily conclusive if the extrinsic evidence is conflicting, and the determination is supported by the evidence. (*Estate of Platt,* 21 Cal.2d 343, 352 [131 P.2d 825]; see, *Stevenson* v. *County of San Diego,* 26 Cal.2d 842, 844 [161 P.2d 553].)

▮ Applying these rules, the instrument sued upon was not void for lack of mutuality of obligation or because of uncertainty and there is ample evidence to support the trial court's construction to that effect. From the instrument itself it is clear that Van Horn made a definite promise, but the corresponding obligation of Woodbine is ambiguous. The

first sentence of the agreement appears to create mutual promises to buy and sell all of the wood located on the described property at the price of $9.00 per cord. It is not clear from the following sentence whether Woodbine impliedly promised to pay for all of the wood or promised to pay only for the wood received each month. However, there is substantial evidence to support the finding of the trial court that Woodbine "obligated himself to buy all of said wood for the sum of $9.00 per cord."

The attorney for Woodbine, who drew the instrument, testified as to conversations between the parties at the time of the execution of the agreement. He testified that both parties agreed that Woodbine was "buying all the wood on the property and there is more than 3,000 cords." The attorney asked Van Horn how much wood he was selling and Van Horn replied: "Between three and six thousand cords." According to his testimony, Woodbine, at the time the contract was executed, said, "I am buying this wood at $9.00 a cord," and Van Horn said, "I am selling this wood at $9.00 a cord." And when Van Horn came to Woodbine's office to sign the contract he stated that the price was "for all of the wood." During the preliminary negotiations between the parties, Van Horn was asked, "Well, was anything said by you in the course of that conversation in regard to whether Mr. Woodbine would take all of the wood or whether some of it would be reserved by you?" Van Horn replied, "Yes," and that he "made specific mention we would want to reserve enough for local retail trade." Further evidence in support of the trial court's construction of this phase of the agreement is the testimony that Woodbine advanced to Van Horn the sum of $2,500 to be applied pursuant to the terms of the contract.

The agreement is not illusive as a "desire or need" agreement. The goods sold are specifically described as "all" of the eucalyptus wood located on particularly described property, consisting of 3,000 or more cords. The contract covered approximately 4,000 cords of fallen wood and the parties agreed to sell and buy that amount at the sale price of $9.00 per cord.

██ Under the terms of the contract, as construed by the parties themselves, Woodbine was obligated to send trucks to haul the wood, and since no time was specified for the performance of the act, the buyer and seller were required to

perform within a reasonable time. (Civ. Code, § 1657.) The provisions in the contract that prices concerning lengths of wood not covered by the contract and that sold to the United States Government were to be adjusted as agreed upon by the parties created uncertainties in the agreement. But no controversy arose concerning these provisions and they are severable from and immaterial to the promises sued upon.

Any uncertainty as to the amount of wood to be cut into 16 or 24-inch lengths was clarified by the construction of the contract placed upon it by the parties. According to the record of deliveries, approximately one-half of the wood taken by the buyer was in 16-inch lengths, the other one-half was of the 24-inch size, which substantiates the undisputed evidence that, at the time the contract was signed, the parties specified these proportions.

None of the cases cited by appellant supports his objections to the contract. In *Schimmel* v. *Martin*, 190 Cal. 429 [213 P. 33], there was "the absence of an agreement by plaintiffs to buy the water offered for sale by the contract." No specific amount of water was contracted for and the price unit was uncertain. The case of *California Refining Co.* v. *Producers Refining Corp.*, 25 Cal.App.2d 104 [76 P.2d 553], concerned an agreement to refine all oil delivered to it by a producer, but the latter did not agree to furnish any particular quantity. Under these circumstances, as the court held, there was no mutuality of obligation with respect to the delivery of the oil. Each of the federal cases cited by appellant concerned an agreement in which there was a promise upon the part of one party with no corresponding obligation binding upon the other, the quantity of merchandise to be delivered being conditioned by the desire or whim of the producer. In the instant case, however, there was an ascertainable amount of wood contracted for and the price was fixed at $9.00 per cord. Mutuality of obligation was thereby established.

Considering the present agreement, an ambiguity was created by the terms of the instrument in regard to the title to the wood, but there was sufficient evidence to warrant the construction of the trial court that the intention was to pass the property in the goods to the buyer. Where there is a contract to sell specific or ascertained goods, the property in them is transferred to the buyer at such time as the parties to the contract intend it to be transferred. For the purpose of ascertaining the intention of the parties, regard shall be had

to the terms of the contract, the conduct of the parties, usages of the trade and the circumstances of the case. (Civ. Code, § 1738; see Vold on Sales, §§ 50, 51, p. 122.) The agreement here sued upon stated that "Van Horn, hereby sells and conveys to W. H. Woodbine all of the eucalyptus wood located on the [described] . . . property."  Although the use of such words as "sells, sold, and convey" indicates that the parties intend that the property in the goods pass (*Christensen* v. *Cram,* 156 Cal. 633, 635 [105 P. 950]; *Bailly* v. *Loock,* 103 Cal.App. 220, 227 [284 P. 235]; see 22 Cal.Jur. 948), their presence in an agreement is not necessarily determinative of the question as to whether the parties intended a sale. (*Universal Sales Corp.* v. *California etc. Mfg. Co.,* 20 Cal.2d 751, p. 768 [128 P.2d 665]; *Walti* v. *Gaba,* 160 Cal. 324, 327 [116 P. 963]; *Blackwood* v. *Cutting Packing Co.,* 76 Cal. 212, 218 [18 P. 248, 9 Am.St.Rep. 199].)  Nor are the words "F O B trucks of W. H. Woodbine" necessarily inconsistent with the immediate passage of title. (*Southern Pac. Co.* v. *Hyman-Michaels,* 63 Cal.App.2d 757, 764 [147 P.2d 692]; *Gianelli* v. *Globe etc. Co.,* 48 Cal.App. 103, 107 [191 P. 720]; see Vold on Sales, pp. 213 et seq.) As construed by the parties, f.o.b. trucks meant that Van Horn would load Woodbine's trucks with the assistance of the drivers. Woodbine admitted that he orally promised to provide this help.  If, after the execution of an agreement, the seller is bound to do something to the specific goods, for the purpose of putting them into a deliverable state, a presumption arises that the parties did not intend that the property pass until such thing be done. (Civ. Code, § 1739, Rule 2.) Under the terms of the agreement, Van Horn, the seller, had to cut the wood into certain lengths and split some of the wood before the goods would be in a deliverable state. But this presumption is not conclusive if there is substantial evidence justifying a determination that the contract is one of sale.

 The conduct of the parties frequently shows whether they regard the bargain as passing the property and the fact that part of the purchase price is paid by the buyer is evidence that the parties contemplate an immediate transference of the property in the goods. (*Gianelli* v. *Globe etc. Co., supra,* p. 106; see Vold on Sales, p. 131 and cases cited under note No. 31; 22 Cal.Jur. 955.) The parol evidence established that Woodbine paid Van Horn $2,500 pursuant to the agreement

and before any of the wood was delivered. And the attorney, testifying in regard to the conversations between the parties at the time the contract was executed, stated: ''I believe something was said that led me to believe that Mr. Van Horn was conveying the title to all the wood.''

The complaint stated sufficient facts to warrant the issuance of an injunction and the evidence and findings sustained the allegations. The complaint alleged and the evidence tended to show that it was impossible to purchase in the open market well seasoned eucalyptus wood of the grade, character, and quality contracted for by Woodbine. Another charge established by the evidence was that because of Van Horn's financial condition, he could not respond in damages and a multiplicity of suits would result if Woodbine were required to maintain an action for each conversion. Van Horn complains that the finding as to his ability to respond in damages is a legal conclusion. However, it is followed in the same paragraph by detailed findings of facts as to his assets, the property owned by him and its value, the incumbrances against it, and his other debts and liabilities, from which it appears that a money judgment would not be collectible. Furthermore, no appeal was taken from the order granting the preliminary injunction (Code Civ. Proc., § 963) and it is now final.

The testimony of Woodbine does not appear to be unworthy of belief and all of the essential matters about which he testified were proved by other witnesses. And whether or not one of the other witnesses was qualified to testify concerning the quantity of wood on the property is immaterial in view of the fact that Van Horn's own testimony did not differ materially as to the number of cords of wood from that of the witness whose qualifications are questioned. Other evidence supports the conclusions in this regard.

The court made findings of fact as to the number of cords of wood covered by the contract, distinguishing between trees that had been severed and those that remained standing at the date the contract was executed. The court also found the number of cords received by Woodbine, the amount not delivered to him and the quantity appropriated by Van Horn to his own use. Other findings were that the respondent's failure to remove the wood was occasioned by the seller's neglect to have it in proper condition for removal as required by

the contract. The testimony was conflicting, but these findings are supported by substantial competent evidence. ■ And although minor inconsistencies, legal conclusions and evidentiary matters appear in the findings, they must be liberally construed and resolved in favor of upholding rather than of defeating the judgment. (*Menghetti* v. *Dillon,* 10 Cal.2d 470, 472 [75 P.2d 596] ; *Murray* v. *Tulare Irr. Co.,* 120 Cal. 311, 315 [49 P. 563, 52 P. 586].) Certainly they disclose no prejudicial error.

■ The detriment caused by the wrongful conversion of personal property is presumed to be the value of the property at the time of conversion, with the interest from that time, or, an amount sufficient to indemnify the party injured for the loss which is the natural, reasonable and proximate result of the wrongful act complained of and which a proper degree of prudence on his part would not have averted. Also the injured party should be awarded a fair compensation for the time and money properly expended in pursuit of the property. (Civ. Code, § 3336.) However, according to the findings, the trial court did not compute damages upon the basis of the wholesale market value of the property at the time of conversion, but used the market value of the wood either at the time of the filing of the complaint or at the time of trial in computing the amount of the judgment. Nor does it appear with any certainty that the alternative method provided by the statute for fixing the detriment caused by the wrongful conversion of personal property was considered by the court in making the award. But the error of finding the value as of the date of the commencement of the action does not require the reversal of the judgment. The complaint was filed about a month after the conversion and the testimony covers the wholesale market value of the wood during the period from the time of conversion until the commencement of the action. One witness testified that, ''I have loaded lots of wood since March 20th [and for the next three or four months after that], and it is $12.00 and $14.00 a cord f.o.b. car.'' Another witness testified that ''the market price has been approximately $9.00 to $10.00 wholesale.'' He later definitely stated that the price was $10 a cord f.o.b. truck. The finding of damage in the amount of $1 per cord is, therefore, supported by evidence of market value at the date of the conversion.

The judgment is affirmed and the purported appeal from the order denying a new trial is dismissed. (*Kellett* v. *Marvel,*

6 Cal.2d 464, 476 [58 P.2d 649] ; *Grimes* v. *Nicholson,* 71 Cal.App.2d 538, 543 [162 P.2d 934] ; *Joseph* v. *Vogt,* 35 Cal. App.2d 439, 442 [95 P.2d 947].)

Shenk, J., Carter, J., Schauer, J., and Spence, J., concurred.