[Civ. No. 23544. Second Dist., Div. Two. May 28, 1959.]

JOHN S. BROOKES, Respondent, v. ADOLPH'S LTD.
(a Corporation), Appellant.

Shaw & Miller and Simon Miller for Appellant.

S. Dell Scott and Forrest Latiner for Respondent.

HERNDON, J.—Appellant seeks reversal of a judgment which sustains respondent's claim to a $3,000 bonus under the terms of a contract of employment evidenced by a writing in the form of a letter.

Appellant is a California corporation engaged in the business of selling a product described as a "meat tenderizer." In 1955 respondent was an advertising executive residing in Chicago, Illinois. In the fall of that year appellant and respondent entered into negotiations which led to an agreement under which respondent was required to move to California and undertake the duties of an employment in appellant's organization. The agreement was reached after a series of meetings and discussions, and the terms thereof were confirmed in a letter dated November 21, 1955, addressed to respondent and signed by Mr. Rigler, appellant's president. This letter stated that Mr. Rigler and Mr. Deutsch, appellant's secretary-treasurer, had "both concluded that we would be happy to have you join our organization as soon as it is conveniently possible for you and would assume that you would be out here ready for work the first week in January." The parties are in agreement that the determination of this appeal

must turn upon the proper interpretation of the following paragraph of said letter:

"*As for compensation, we are agreed to the terms discussed at our last meeting which would be a base pay of $15,000 per year, with a bonus of $3,000 at the end of the first year if we feel that you have satisfactorily filled our requirements of increasing our sales, or at least not having them fall below the rate that they were before you came—plus, of course, our mutual desires to have you continue on with us.*" (Emphasis added.)

The letter also contained a provision that respondent's moving expenses would be reimbursed within a limit of $1,500, and that respondent would assume the title of director. The closing sentence stated: "I would appreciate your finalizing your decision and confirming this letter to us as soon as possible and let us know when you expect to arrive here." Respondent replied to the foregoing in his letter dated November 26, 1955, stating, among other things, "I am glad to be able to accept your kind offer in essence, and will report early in January, not later than the 9th."

Respondent commenced working for appellant early in January, 1956, and continued in the employment until the latter part of November of that year. It appears to be undisputed that sales of appellant's product during 1956 exceeded those of the preceding year. On or about November 23, 1956, respondent was informed that his services were no longer needed and was tendered a check for his last month's salary bearing the notation "Balance of Salary in Full to 12-31-56." This check did not include the $3,000 bonus. Because appellant refused to remove the restrictive legend, respondent refrained from cashing the check. Subsequent to the trial, however, the parties entered into a stipulation that respondent might cash his last salary check without prejudice to his other claims, and that the issues in the litigation would be limited to respondent's right to receive the $3,000 bonus. It was further agreed that if respondent's right to the bonus was ultimately established, he would be entitled to recover the further sums of $308.39, representing accrued interest on the bonus to the date of judgment and $129.21, representing interest on the last installment of respondent's salary check to the date of judgment, together with trial court costs in the amount of $55.90.

At the trial, appellant's counsel took the position that since the employment contract was within the statute of frauds, it

was necessary that the rights of the parties be determined solely by reference to the language of the writing; that parol evidence could not properly be admitted in aid of its interpretation, and that the writing in question was clear, unambiguous and susceptible of only one reasonable interpretation. Appellant urged in the trial court, as it urges here, that the only reasonable construction of the language in question is that payment of respondent's bonus was subject to the fulfillment of two independent conditions: (1) respondent's satisfactory fulfillment of appellant's requirements regarding sales, and (2) that there be a mutual desire of the parties to have the employment continue beyond the first year.

Respondent, on the other hand, took the position (a) that the only condition precedent to his right to the bonus was that appellant's sales in 1956 should exceed those of 1955; and (b) that the "plus" clause in appellant's letter of November 21, 1955, was intended merely to allay respondent's apprehension that he was being hired only to accomplish a certain limited objective without favorable prospect of long term employment.

In the face of these conflicting contentions, the trial court ruled that the language of the writing was sufficiently unclear to admit of different interpretations, and, therefore, that extrinsic evidence should be admitted to aid the court in arriving at the true intent of the parties. Accordingly, evidence was admitted over appellant's objection which included respondent's testimony as to his understanding of the purpose and meaning of the clause in question. This parol evidence also related to the circumstances of the parties at the time the agreement was negotiated, and to some of the oral discussions which preceded it. We shall briefly set forth the substance of this evidence:

In 1955 respondent was employed as an advertising executive by a Chicago firm at a yearly salary of $21,000 but was interested in living in Los Angeles. At a meeting in Burbank with appellant's principal officers, respondent's background and experience in the marketing field were discussed. Respondent stated that he would be willing to come to California to work for appellant at a salary of $18,000 per year. Thereafter, in September of the same year, respondent met with Mr. Rigler in Chicago. Rigler explained to respondent that appellant's sales had fallen severely, and that the object of having respondent join the company was to stop the falling trend of sales. Rigler stated that he and Mr. Deutsch con-

sidered the figure of $18,000 to be rather high but that they felt that if that amount were to be paid, it should be paid on the basis of $15,000 for the year in equal monthly installments, plus $3,000 at the end of the year. Respondent expressed his belief that he could be helpful in reversing the adverse trend of sales, but stated that from what Mr. Rigler had said it appeared that the position being offered respondent was of a limited nature merely to stop the falling sales with no future beyond that. Rigler replied that this was not the situation, and assured respondent that a continuing position with future opportunity was being offered him. In later conversations respondent's concern about the limited aspect of the proposed employment was again expressed. In each instance, Rigler gave his assurance that a short term employment was not what appellant had in mind.

Finally in November of 1955, Mrs. Brookes in Chicago answered a long-distance telephone call from Mr. Rigler intended for respondent, who, at that time, was in Baltimore on business. Rigler told Mrs. Brookes that he had discussed the matter with Deutsch and that he would accept the terms on which he and respondent had agreed upon at their last meeting. Mrs. Brookes replied that she would prefer not to have the responsibility of relaying such a message to her husband, and asked Rigler to confirm the agreement by a letter addressed to respondent. Rigler's letter of November 21, 1955, was thereafter received by respondent. Respondent testified that in the light of previous conversations with Mr. Rigler, he considered this letter to be direct confirmation of their prior discussions to the effect that he would be entitled to the bonus payment if he succeeded in maintaining sales at the current level. He understood the so-called "plus" clause as merely a reaffirmation of the earlier oral assurances that he was not being hired on a stopgap basis but that a continuing employment was contemplated.

On the basis of this evidence the trial court made findings the effect of which was to sustain respondent's position regarding the proper interpretation of the agreement. Appellant does not deny fulfillment of the condition with respect to the maintenance of a satisfactory level of sales but rests its argument entirely upon the proposition that the agreement clearly and unequivocally stated a second condition precedent which was not satisfied.

We hold that the trial court correctly ruled that the writing was reasonably susceptible of different and conflicting

interpretations, and that parol evidence was properly admitted to aid the court in determining the true intent of the parties.

■ When the language used in a written agreement is fairly susceptible to one of two constructions, extrinsic evidence may be considered, not to vary or modify the terms of the agreement, but to aid the court in ascertaining the true intent of the parties. Such evidence is received, not to show that the parties meant something other than what they said but to show what they meant by what they said. (*Beneficial etc. Ins. Co.* v. *Kurt Hitke & Co.*, 46 Cal.2d 517, 524 [297 P.2d 428] ; *Barham* v. *Barham*, 33 Cal.2d 416, 422, 423 [202 P.2d 289] ; *Union Oil Co.* v. *Union Sugar Co.*, 31 Cal.2d 300, 306 [188 P.2d 470] ; *cf. Woodbine* v. *Van Horn*, 29 Cal.2d 95, 104 [173 P.2d 17].) ■ When the language of a written agreement is not clear, evidence of the negotiations of the parties and of the surrounding circumstances is admissible for the purpose of determining the meaning of its provisions. (*Decter* v. *Stevenson Properties, Inc.*, 39 Cal.2d 407, 416 [247 P.2d 11].) "It is a settled rule that when the language employed is fairly susceptible of either one of two constructions contended for without doing violence to its usual and ordinary import an ambiguity arises where extrinsic evidence may be resorted to for the purpose of explaining the intention of the parties, and that for this purpose conversations between and declarations of the parties during the negotiations at and before the execution of the contract may be shown." (*Beneficial etc. Ins. Co.* v. *Kurt Hitke & Co., supra*, 46 Cal.2d 517, 525; *Kenney* v. *Los Feliz Investment Co., Ltd.*, 121 Cal.App. 378, 386-387 [9 P.2d 225].)

Citing such cases as *Seymour* v. *Oelrichs*, 156 Cal. 782 [106 P. 88, 134 Am.St.Rep. 154], and *Ellis* v. *Klaff*, 96 Cal.App.2d 471 [216 P.2d 15], appellant advances the proposition that if parol evidence was needed in order to ascertain the meaning of the writing, then as a matter of law the writing was insufficient to satisfy the requirements of the statute of frauds. This proposition is not in accord with the law and the cases cited do not support it. The essence of the holdings in *Seymour* v. *Oelrichs, supra*, and *Ellis* v. *Klaff, supra*, was to the effect that parol evidence may not be resorted to for the purpose of supplying an essential but missing element of a contract within the statute of frauds. In the latter case the court stated with reference to the rejection of certain oral evidence: "This was an attempt, not to resolve an ambiguity, but to supply essen-

tials of a complete agreement which were lacking in the writing.'' (*Ellis* v. *Klaff, supra,* 96 Cal.App.2d 471, 480.)

The rule applicable in the instant situation was stated in *Gibson* v. *De La Salle Institute,* 66 Cal.App.2d 609, 619 [152 P.2d 774] : ''It is well established that where the meaning of language used in a note or memorandum under the statute of frauds is uncertain or ambiguous, parol evidence is admissible to show the circumstances surrounding the transaction for the purpose of arriving at a determination of the meaning intended and understood by the parties.''

 The lack of clarity and precision in the language employed by appellant in the third paragraph of its letter of November 21, 1955, is self-evident. Indeed, the language may fairly be characterized as inept and inartificial. Had it been appellant's purpose to require fulfillment of a second condition to respondent's right to the bonus, such purpose could have been served by the use of a simple form of expression. Instead, however, appellant tacked on at the end of a lengthy and complex sentence an independent disconnected clause, containing a pronoun whose antecedents are obviously uncertain.

In the light of the properly admitted extrinsic evidence, the trial court's interpretation of the unclear language of the writing under discussion appears to be entirely reasonable.

 It is well-settled that an appellate court will accept the interpretation of a contract adopted by the trial court and will not substitute another of its own where parol evidence has been introduced in aid of its interpretation and such evidence will support conflicting inferences. (*Estate of Rule,* 25 Cal.2d 1, 11 [152 P.2d 1003, 155 A.L.R. 1319] ; *Johnston* v. *Landucci,* 21 Cal.2d 63, 69 [130 P.2d 405, 148 A.L.R. 1355] ; *Universal Sales Corp.* v. *California etc. Mfg. Co.,* 20 Cal.2d 751, 772 [128 P.2d 665] ; *Overton* v. *Vita-Food Corp.,* 94 Cal.App.2d 367, 370 [210 P.2d 757].) ''Where extrinsic evidence has been properly admitted as an aid to interpretation, and either the evidence or inferences therefrom are in conflict, any reasonable construction by the lower court will be upheld under the general rule of conflicting evidence.'' (3 Witkin, California Procedure, 2253, § 89.)

In accordance with the stipulation on appeal, the judgment is modified by reducing it to the sum of $3,437.60 and as thus modified it is affirmed. Respondent will recover in addition his costs as taxed and allowed in the trial court and his costs on this appeal.

Fox, P. J., and Ashburn, J., concurred.