[Civ. No. 7272.   Third Dist.   Apr. 25, 1947.]

W. J. ERICH et al., Respondents, v. GERARD P. DUNKLY et al., Appellants.

Charles A. Christin and Thomas J. Keegan for Appellants.

Hardin Barry and S. C. Young for Respondents.

ADAMS, P. J.—This is an appeal from a decree of foreclosure and sale which involved two chattel mortgages, the

one dated October 13, 1941, given by defendants to secure a promissory note for $1,800 assigned to plaintiffs by the mortgagees, and the other dated April 6, 1944, securing a promissory note for $4,175.03, executed by defendants to plaintiffs.

Defendants, at the time of the execution of said notes and mortgages, were engaged in the business of raising trout for market, their place of business, known as Lava Springs Trout Farm, being located upon certain land in Plumas County upon which they held a lease. The earlier mortgage covered some 260,000 trout of various sizes, "together with any and all increases and additions thereto" during the life of the mortgage. It also covered all buildings, improvements, equipment and tools incidental and appurtenant to the operation of the trout farm, and located thereon, together with all of the mortgagors' right, title and interest in the lease held by them on the property constituting the farm.

The second mortgage covered the leasehold, and a long list of buildings, equipment of various kinds, certain motor vehicles, household equipment, furniture, etc.; also 286,000 trout of various sizes, the instrument reciting that it was intended to include "all trout at hatchery including all future increase."

Prior to the execution of the latter mortgage an agreement was entered into between plaintiffs and defendants under which the plaintiffs agreed to assume certain specified debts owed by defendants and to make certain advances for purposes connected with defendants' operations on the trout farm; and defendants undertook certain specified obligations and to keep the hatchery operating at a capacity of not less than 200,000 trout at all times. The agreement, as well as defendants' promissory note, was agreed to be secured by the aforesaid chattel mortgage. Defendants further agreed to assign their lease to plaintiffs as further security, and provided that upon their default plaintiffs were to be "entitled to immediate possession of the said real property and second parties [defendants] have no further interest thereunder."

Defendants having defaulted in the performance of their obligations, plaintiffs brought this action, alleging in the first count that there was due them under the first mortgage on account of the note and advances made by them together with interest, the sum of $2,638.75. They prayed judgment for that amount, together with a reasonable attorney's fee, and that defendants be foreclosed of all interest, lien, and

equity of redemption of the mortgaged property. In a second count, on the second mortgage, judgment was sought for $5,245 and attorney's fees, and plaintiffs prayed that defendants be foreclosed of all interest and equity of redemption of the mortgaged property.

After trial of the cause by the court without a jury, findings were made in favor of plaintiffs, which findings recited that the property mentioned in the mortgages was as therein recited, except that the trout on hand consisted of but 108,000 of varying sizes. Judgment was awarded plaintiffs for $8,468.49, and the decree further provided that the equity of redemption of the defendants and all persons claiming under them "in and to said mortgaged property be and the same is hereby forever barred and foreclosed." The decree set forth in detail the mortgaged property in conformity with the descriptions contained in the mortgages, including all interest in the lease.

From that decree defendants have prosecuted this appeal, asserting two grounds for reversal. The first is, that the undisputed testimony of defendant Dunkly shows that his method of trout farming was to buy trout eggs, which were then incubated at the hatchery, after which the trout were grown to marketable size and then sold; that no trout were raised on the trout farms by natural propagation and that, at the time of the trial, all of the trout which were covered by the chattel mortgages had been sold or had died from natural causes; and that, while the first mortgage included a specified number of fish and purported to cover "any and all increases and additions thereto" during the life of the mortgage, the mortgage of 1944, covered only the number of trout enumerated "including all future increase"; that "increase" must be construed as meaning only the natural increase of the trout which were at the hatchery at the time the mortgage was executed, and not additions thereto, and, as there had been no such increase the court erred in foreclosing defendants' interest in the trout inventory for repayment of the debt secured by the 1944 mortgage.

The trial court found that the parties intended by their mortgages and agreement and by their method of propagating trout commercially, that the word increase should mean and include all additions and replacements of trout at the hatchery, and there is ample evidence to support this conclusion. Mr. Dunkly testified that prior to the execution of

either mortgage he explained to the mortgagees his method of operation, that he did not produce fish at the hatchery but bought the eggs elsewhere and grew the fish therefrom, selling them when they reached marketable size. It was therefore inferable that both mortgages were intended to cover increases due to the purchase of eggs, otherwise the second mortgage, insofar as it covered trout, would have been rendered valueless by the mere passage of time and the sale or demise of the trout on hand at the time of the execution of the instrument.

■ If the language of the mortgage was subject to construction it was proper for the trial court to construe it in the light of all the circumstances; and its construction, being a reasonable one and consistent with the intention of the parties as indicated by the circumstances, will not be disturbed by an appellate court. (*Woodbine* v. *Van Horn,* 29 Cal.2d 95, 104 [173 P.2d 17]; *Universal Sales Corp.* v. *California etc. Mfg. Co.,* 20 Cal.2d 751, 761, 772 [128 P.2d 665]; *Enos* v. *Armstrong,* 75 Cal.App.2d 663, 668-669 [171 P.2d 137]; *Baird* v. *Lindblad,* 75 Cal.App.2d 202, 204-205 [170 P.2d 488]; Code Civ. Proc., § 1860; Civ. Code, §§ 1636, 1647.)

■ Appellants' contention that it was error to foreclose their equity of redemption insofar as their lease was concerned is based upon the provision of section 700a of the Code of Civil Procedure that ''Sales of personal property, and of real property, when the estate therein is less than a leasehold of two years' unexpired term, are absolute. In all other cases the property is subject to redemption, as provided in this chapter.'' Assuming but not deciding the applicability of that section to this case, we think that this contention is disposed of by the decision in *Title Insurance & Trust Co.* v. *California Development Co.,* 171 Cal. 173 [152 P. 542]. That case involved the validity of a decree directing the sale as an entirety and without right of redemption, of all of the property, real and personal, covered by the lien of a mortgage or deed of trust, which property constituted the whole canal and irrigation system constructed and developed for the purpose of diverting water from the Colorado River and applying it to the irrigation of certain lands in Imperial County. There the court said, pages 202-203: ''The ground for supporting such sale is to be found in the essential unity of the system. Where there is a mortgage covering real and

personal property, comprising parts of a single working plant or utility, in which each part is necessary to give value to the others, and where a dismemberment of the system would destroy or greatly impair the usefulness or value of its component parts, the propriety of a decree like the one here made is well settled. The statute giving a right of redemption upon execution sales of real property is held to have no application to such cases.'' The court there cited cases to a like effect where the property involved constituted a system or plant whose dismemberment would destroy or impair the usefulness or value of the parts. Also see *Friedrichsen* v. *Guaranty Trust Co. of New York*, 39 F.2d 859, 865, cert. den. 282 U.S. 852 [51 S.Ct. 29, 75 L.Ed. 755].

It is obvious from a reading of the list of properties secured by the mortgages in this case, particularly the second one, and by the nature of the business, that dismemberment would practically destroy the value of most if not all of its parts. Furthermore, the agreement between plaintiffs and defendants, as aforesaid, provided that upon defendants' default plaintiffs were to be entitled to immediate possession of the real property and defendants were to have no further interest therein. Under such circumstances the trial court was justified in foreclosing defendants' equity of redemption, and defendants are in no position to complain. Furthermore, there is nothing in the record to show that appellants raised this point in the lower court.

The judgment is affirmed.

Peek, J., and Thompson, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied June 23, 1947.