[Civ. No. 23928.   Second Dist., Div. Three.   Mar. 16, 1960.]

GEORGE A. McNEE, Appellant, v. HAROLD HENSGEN AND ASSOCIATES (a Partnership) et al., Respondents.

William D. Spector for Appellant.

Tannenbaum, Steinberg & Shearer, Jacob Shearer and Bertram Fields for Respondents.

BISHOP, J. pro tem.*—The appeal is by the plaintiff from a judgment of dismissal that was entered after a demurrer had been sustained to his second amended complaint, without leave to amend. The demurrer was special as well as general, but the sufficiency of the second amended complaint to state a cause of action is the only question argued on appeal. The answer to that question depends upon the construction to be

*Assigned by Chairman of Judicial Council.

placed upon the written contract that is the basis of plaintiff's case. Not being bound by the trial court's interpretation of the writing at this stage of the proceedings (*Messenger* v. *Messenger* (1956), 46 Cal.2d 619, 626 [297 P.2d 988, 992]), we have examined the contract and reached the conclusion that the second amended complaint states a cause of action. There is a bit of uncertainty in the contract—drafted by the defendants and so to be construed against them (Civ. Code, § 1654)—which upon a trial, may be the subject of clarifying evidence, but the present judgment must be reversed.

Throughout our discussion we shall refer to the "defendants" as though there was no difference between their obligations. Actually the Lespring Oil Company, a limited partnership whose last surviving partner plaintiff is, entered into a contract as "Seller" with only the defendant Harold Hensgen and Associates, another partnership, as "Buyer," When, encountering difficulty, the two resolved upon a partial solution of their troubles, defendants Victory Packing Company and David E. Hirsch gave plaintiff a written guarantee of the payment of any sum to be found due by defendant Harold Hensgen and Associates. We interpret the pleadings as indicating that the other defendants are members of the last named partnership. In any event, all the defendants joined in the demurrer that was sustained without leave, and none makes any point of having a special position on this appeal, so all are listed as "defendants" in our consideration.

These are the provisions of the agreement, upon which the plaintiff relies, that we should have before us: "THIS AGREEMENT is made and entered into this 5 day of March, 1953. . . .

"WHEREAS, Seller is the owner of a certain tract of land in Torrance, . . . and

"WHEREAS, Buyer is desirous of purchasing said land. . . ."

"1. Seller agrees to sell and Buyer agrees to buy subject to the terms of this Agreement, that certain real property located in the City of Torrance . . . legally described as: Lots 102, 103, 104, 105, 106, 112, 113, 114, 115, 116 and 117 of Tract 2200. . . .

"2. The purchase price for said land shall be $4,300.00 per acre. . . . It is understood and agreed that there is a railroad right of way over a portion of said property [words omitted here to be supplied later] and that this sale shall be subject to said right of way. . . .

"8. . . . It is understood and agreed that Buyer will deposit in said escrow, immediately upon its opening or within

seventy-five days from the date of this Agreement, the full purchase price for Lots [112-117]. . . . Buyer agrees to deliver to Seller a Note for the entire unpaid balance of the purchase price of Lots [102-106], which Note shall be due six months from the date of the close of escrow of first six lots. . . .

"9. It is understood and agreed that the full purchase price of Lots [112-117] will be paid through escrow to Seller at such time as Seller is able to furnish a policy of title insurance . . . guaranteeing title vested in Buyer . . . free and clear of all encumbrances and restrictions except the railroad right of way mentioned above. . . . The entire balance of the purchase price of Lots [102-106] will also be paid through escrow under like conditions. . . . It is understood and agreed that said railroad right of way extends only to Lots [102-106]."

The defendant was purchasing the property for subdivision purposes, and the contract contained many provisions touching on this phase of the matter. These provisions were twice adjusted by modifications of the contract (we discover by referring to the original complaint) but no modification affects our problem. By August of 1953 the parties, with the deal in escrow, found themselves in disagreement over one question: Was the acreage within the right of way to be included in or excluded from the calculation whereby the total amount to be paid was to be determined? Desirous of concluding the sale without delay, the parties entered into a writing stating their disagreement as to the one matter, and agreeing to consummate the deal, but leaving for future determination this one question: ". . . whether or not the portion of Lots 102 through 106 of Tract 2200, owned by the . . . Railroad . . . is to be included in the acreage for the purpose of determining the total purchase price of the property." This supplemental contract was carried out; the ". . . Lespring Oil Company deeded all of its interest in said Property to Defendants and said Defendants have paid to Lespring Oil Company the purchase price . . ." excepting, if all the acreage is the proper basis of computation, over $6,000.

We purposely omitted, as noted, some words from paragraph numbered 2 of the March 5, 1953 agreement, in order to emphasize our conclusion that without those words the meaning of the agreement is unmistakable: The buyer undertook to pay the seller for all the acreage in the 11 lots. It may be that the parties thought that by "right of way" was meant an easement; the provisions that the sale shall be "subject to said right of way" and that the title shall be guar-

anteed "free and clear of all encumbrances and restrictions except the right of way" would indicate this. Whatever may have been the understanding of the parties as to the character of the right of way, the seller became obligated to deed all of the 11 lots, and the buyer to pay therefor the sum in dollars to be determined by multiplying by $4,300 the number of acres found to be in the lots, no provision being made for subtracting the acres lying within the right of way.

At most, an uncertainty in the agreement was created by the addition of the words in paragraph 2 that we have omitted up to now: ". . . and that that portion of said right of way which is owned by Seller will not be deducted from the total acreage in determining the purchase price. . . ." These words do not say, as is stated on behalf of the defendant, that the portion of the right of way *not* owned by the seller *is* to be deducted. It is only by applying the maxim *expressio unius est exclusio alterius,* that the idea is conveyed that the parties meant by the quoted words, to *exclude* from consideration the acreage *not* owned by the seller. ▮ The maxim is usually applied in the construction of statutes, and even then it gives way to the intent otherwise expressed. (45 Cal.Jur.2d 640; *Dickey* v. *Raisin Proration Zone No. 1* (1944), 24 Cal.2d 796, 811 [151 P.2d 505, 513, 157 A.L.R. 324].) ▮ We, then, in the absence of any evidence that by the terms used the parties meant not to have all the acres in the 11 lots taken into account, would conclude that they did intend to have all included in the count.

▮ It may be, however, that the parties did intend, by specifying that the portion of the right of way owned by the seller should *not* be excluded from their mathematical formula, that that which was not so owned should be excluded. Because it "may be," an uncertainty can be said to have crept into the contract as written, so that it will be proper for the parties to undertake to prove, by extrinsic evidence, what the language used was meant to mean, not for the purpose of reconstructing the contract, but to reveal its proper construction.

If this slight uncertainty in the contract should be sufficient to bring into play those cases holding that in a complaint based on a contract which is not free from doubt ". . . some definite construction must be placed upon it by averment or the pleading will be subject to demurrer (*Bates* v. *Daley's, Inc.* (1935), 5 Cal.App.2d 95, 101 [42 P.2d 706, 709] ; and see *Silvers* v. *Grossman* (1920), 183 Cal. 696, 700 [192 P. 534, 536],

and cases cited), it does not follow that the demurrer to the second amended complaint was properly sustained without leave. By its averments plaintiff's position was made unmistakable; from the negotiations that led up to the drafting of the contract, the contract should be interpreted as including the acreage in the right of way in the calculations of the price to be paid. It will be proper for the plaintiff to endeavor to prove his allegations concerning the negotiations. (*Brookes* v. *Adolph's Ltd.* (1959), 170 Cal.App.2d 740, 745 [339 P.2d 879, 882].) The pleading of the construction to be placed upon the contract is inartful, but it does not leave the pleading vulnerable.

As already pointed out, the parties have not bothered to discuss the grounds of the demurrer, other than the general ground that the second amended complaint did not, in either count, state facts sufficient to constitute a cause of action. We shall not comment on the special grounds other than to say that we have considered them and find none to warrant the order sustaining the demurrer.

The judgment is reversed with directions to the trial court to overrule the demurrer to the second amended complaint.

Vallée, Acting P. J., and Ford, J., concurred.

A petition for a rehearing was denied April 11, 1960.